IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FUMA INTERNATIONAL LLC, an Ohio limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:19-CV-260 |
| R.J. REYNOLDS VAPOR COMPANY, a North Carolina corporation, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Plaintiff Fuma International LLC contends that defendant R.J. Reynolds Vapor Company has infringed on its e-cigarette design patent. RJR denies these claims and has filed a counterclaim against Fuma contending, *inter alia*, that the patent is unenforceable because of inequitable conduct by Fuma and its co-founder, Greg Conley, during the patent application process. Fuma moves to dismiss the counterclaim for failure to state a claim upon which relief can be granted. Because RJR has sufficiently pled inequitable conduct by Mr. Conley for allegedly misrepresenting certain individuals as inventors of Fuma's e-cigarette patents and by Mr. Conley and Fuma's patent counsel for allegedly misrepresenting prior patent applications and prior art to patent examiners, the motion to dismiss the counterclaim is denied to the extent it is based upon these grounds. As to any other claimed inequitable conduct, the motion to dismiss is granted.

## I. Inequitable Conduct

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc) (summarizing Supreme Court precedent establishing the inequitable conduct defense). "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive" the U.S. Patent and Trademark Office. *Id.* at 1290. Ultimately, the alleged infringer must provide "clear and convincing evidence" that the intent to deceive is "the single most reasonable inference able to be drawn from the evidence" before a court may issue judgment against a patentee based on inequitable conduct. *Id.* at 1290–91 (internal quotation and citation omitted).

This evidentiary standard does not apply here at the pleading stage, where the Court must consider whether RJR's allegations are sufficient to survive a motion to dismiss. *See Koch Agronomic Servs., L.L.C. v. Eco Agro Res. L.L.C.*, No. 1:14CV679, 2015 WL 5712640, at *5 n.5 (M.D.N.C. Sept. 29, 2015); *CertusView Techs., L.L.C. v. S&N Locating Servs., L.L.C.*, 107 F. Supp. 3d 500, 506 n.2 (E.D. Va. 2015); *Prowess, Inc. v. RaySearch Labs., AB*, 953 F. Supp. 2d 638, 649 n.26 (D. Md. 2013); *Cutsforth, Inc. v. LEMM Liquidating Co.*, No. 12-cv-1200, 2013 WL 2455979, at *4 (D. Minn. June 6, 2013). But a party must plead inequitable conduct with particularity under Rule 9(b)

2

of the Federal Rules of Civil Procedure.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).[1]

To state a claim for inequitable conduct, a party must "identify the specific who, what, when, where, and how of the material misrepresentation or omission." *Id.* at 1328. The party claiming inequitable conduct must also state "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29; *accord Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011).

## II.  The Inventor Issues

### A.  Factual Allegations

According to RJR's counterclaim,[2] in 2009 and 2010 Mr. Conley and Daniel Hillenbrandt filed three patent applications for various components of electronic cigarettes.  Doc. 18 at pp. 63–64 ¶¶ 28–30.  In all three applications, they listed themselves as the inventors.  *Id.*  They allowed two of the applications to expire and abandoned the third in 2014.  *See id.* at p. 73 ¶ 53; Doc. 18-7.

---

[1] While "the laws of the regional courts of appeals govern whether to grant a motion to dismiss under Rule 12(b)(6) . . . Federal Circuit law governs whether a defendant has pleaded inequitable conduct with sufficient particularity under Rule 9(b)." *CertusView*, 107 F. Supp. 3d at 505.

[2] The facts stated here and elsewhere are from the allegations in RJR's counterclaim, Doc. 18 at 57–98, which the Court accepts as true for purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 2011, Mr. Conley, his wife Rebecca Conley, Mr. Hillenbrandt, Michael Mandela, and William Steiger filed a fourth "provisional" patent application for an electronic vaporizer, listing all five individuals as inventors. Doc. 18 at p. 64 ¶ 31. In 2012, they filed a fifth patent application, the "'813 application," to supersede this provisional application for the same electronic vaporizer, and this application also listed all five as inventors. *Id.* Mr. Conley asked Dr. Tomsik, a Fuma contractor who worked on the subject matter claimed in the '813 application, if he wanted to be named as an inventor, but Dr. Tomsik declined. *Id.* at p. 76 ¶ 58. Eventually, in November 2014, the "'628 patent" issued from the '813 application listing Mr. Conley, Mrs. Conley, Mr. Hillenbrandt, Mr. Mandela, and Mr. Steiger as inventors. *Id.* at p. 65 ¶ 32; Doc. 18-10.

In October 2014, shortly before the '628 patent issued, Mr. Conley, Mrs. Conley, Mr. Hillenbrandt, Mr. Mandela, and Mr. Steiger filed another patent application, the "'955 application," that was a continuation of the '813 application and that again listed all five as inventors. Doc. 18 at p. 65 ¶ 33. The '955 application resulted in the patent underlying Fuma's claims in this case, the "'604 patent," which issued on January 3, 2017. *Id.* at p. 65 ¶ 34. All five patent applications and the two patents, '604 and '628, concern overlapping subject matter and are therefore part of the same patent "family." *See id.* at p. 60 ¶ 17, p. 64 ¶ 31, p. 66 ¶ 35; Doc. 18-7 (diagram of the '604 patent family).

In 2014, before any patents had issued and several months before filing the '955 application, a dispute arose over ownership of the '628 patent rights. Doc. 18 at p. 66 ¶ 37. Mr. Steiger sued Fuma and the other listed inventors in Ohio state court seeking, *inter alia,* a declaration that the '628 patent, and later the '955 application, were owned

4

by the individual defendants in that action instead of Fuma. *Id.* Fuma and Mr. Conley then filed a declaratory judgment action in the U.S. District Court for the Northern District of Ohio against Mr. Hillenbrandt, Mr. Steiger, and Mr. Mandela seeking a declaration that those individuals were not inventors or owners of any Fuma intellectual property and that Mr. Conley was the sole inventor. *Id.* at p. 67 ¶ 39.

During the Ohio proceedings, Mr. Conley testified that none of the other listed inventors had invented the subject matter claimed in the patent applications. *Id.* at p. 70 ¶ 46, p. 71 ¶ 49. Some of the other listed inventors testified in ways that tended to indicate they were not true inventors. *See id.* at pp. 71–72 ¶ 50, p. 73 ¶ 52. The cases eventually settled, with Mr. Hillenbrandt and Mr. Steiger assigning any ownership rights to Fuma in exchange for monetary payments. *Id.* at pp. 77–78 ¶¶ 61–65. The state court also entered a judgment against Mr. Mandela declaring that he had no rights to Fuma's patents. *Id.* at p. 78 ¶ 64.

Neither Fuma nor any of the purported inventors ever specifically informed the Patent Office that there was a dispute about who qualified as inventors of Fuma's patents and none provided the Patent Office with any pleadings or depositions from the Ohio proceedings. *Id.* at p. 79 ¶ 68. In October 2016, after the Patent Office issued a Notice of Allowance for the '955 application, Fuma did ask the state court to mail a copy of the stipulated entry of settlement to the Patent Office, *id.* at p. 79 ¶ 67, and a transcript of the August 2016 state court hearing where the bulk of the two Ohio cases were settled and the stipulated entry of settlement signed by the state court Judge and the parties were filed with the Patent Office. *Id.* at 69 n.4; Doc. 18-16. Neither document includes

5

discussion about the inventorship dispute in detail; they instead show only that the parties resolved the intellectual property rights in and ownership of the patents. *See* Doc. 18 at p. 79 ¶ 68; Doc. 18-16. Fuma and Mr. Conley also filed unsigned declarations from Mrs. Conley, Mr. Hillenbrandt, Mr. Mandela, and Mr. Steiger declaring they were inventors of the '955 patent subject matter and documents assigning all ownership rights of these individuals and Mr. Conley to Fuma. Doc. 18 at pp. 79–81 ¶¶ 69–70.

### B. Analysis

In its counterclaim, RJR alleges that on Fuma's behalf Mr. Conley engaged in inequitable conduct sufficient to void the '604 patent[3] in two ways related to inventorship. First, RJR contends that Mr. Conley failed to identify the true inventors in the '604 patent family applications because Mr. Hillenbrandt, Mrs. Conley, Mr. Steiger, and Mr. Mandela were not actually the inventors of anything and because Dr. Tomsik was an inventor and should have been listed in the '813 application. *See* Doc. 18 at pp. 83–85 ¶¶ 79–85. Second, RJR contends that Mr. Conley further misled the Patent Office about the identity of the inventors by failing to adequately correct the outstanding applications or advise the Patent Office of evidence developed in the Ohio proceedings that the listed inventors were not, in fact, the actual inventors. *Id.* at pp. 85–88 ¶¶ 86–93.

---

[3] The allegations of inequitable conduct for all applications in the '604 patent family are relevant even though Fuma's patent infringement claims are based on the '604 patent alone because "the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family," and thus "a finding of inequitable conduct may endanger a substantial portion of a company's patent portfolio." *Therasense*, 649 F.3d at 1288–89 (internal citation omitted).

Fuma does not contend that RJR's allegations as to inventorship lack the requisite particularity as to the "who, what, when, where, and how" under Rule 9(b).[4] *See* Doc. 25. Rather, Fuma contends that RJR has not pled facts sufficient to show that there was any intent to deceive the Patent Office or that any mistakes as to inventorship were material. *Id.* at 11–18.

### 1. Dr. Tomsik

RJR has not alleged any facts from which the Court could infer a specific intent to deceive the Patent Office as to Dr. Tomsik's proper status. Instead, the allegations in the counterclaim indicate that Mr. Conley omitted Dr. Tomsik as an inventor based on Dr. Tomsik's own belief that he was not an original inventor and should not be listed. *See* Doc. 18 at p. 76 ¶ 58; Doc. 25-1 at 6, 17.[5] This does not plausibly support the inference that Mr. Conley intended to deceive the Patent Office. Since intent is a required element

---

[4] RJR alleges that Mr. Conley ("who") misrepresented the true inventors of the subject matter claimed in the '604 patent family ("what"), Doc. 18 at p. 61 ¶ 25, when he caused patent application documents to be filed, *see id.* at p. 60 ¶ 19, p. 62 ¶ 26, either listing non-inventors as inventors or declaring that non-inventors were inventors ("how"). *See id.* at pp. 63–65 ¶¶ 28–33. RJR lists the specific patent application documents ("where") filed on dates certain from 2009 to 2014 ("when"). *See id.*; Docs. 18-5; 18-6; 18-8; 18-9; 18-11. RJR also alleges that Mr. Conley later failed to inform the Patent Office about the actual inventorship of the subject matter claimed in the '604 patent family. *See* Doc. 18 at pp. 79–81 ¶¶ 68–70. These allegations plead inequitable conduct with sufficient particularity, as required under Rule 9(b).

[5] RJR referenced specific pages of a May 2016 trial transcript in its counterclaim. *See* Doc. 18 at p. 76 ¶ 58 (citing to pages 291–92 and 366–67 of the May 2016 trial transcript). Fuma included the referenced pages as attachments to its motion to dismiss. *See* Doc. 25-1 at 6–7, 16–17. The Court has considered these excerpts as they were referenced in and incorporated by the counterclaim. *See Alexander v. City of Greensboro*, No. 1:09–CV–934, 2011 WL 13857, at *6 (M.D.N.C. Jan. 4, 2011) (holding that a court may consider on a motion to dismiss documents attached to the motion to dismiss that are integral to and explicitly relied on in the complaint and where the plaintiffs do not challenge its authenticity, citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

of an inequitable conduct claim, *see Exergen*, 575 F.3d at 1328; *Delano Farms*, 655 F.3d at 1350, the motion to dismiss will be granted to the extent it is based on allegations of Dr. Tomsik's status as inventor.

### 2. Other Listed Inventors

As for the individuals who were listed as inventors, RJR alleges that Mr. Conley knew of his duty of candor to the Patent Office but chose to misrepresent Mrs. Conley, Mr. Steiger, Mr. Hillenbrandt, and Mr. Mandela as inventors on '604 patent family application documents to "incentivize, recognize, and reward members and employees . . . of his company Fuma for their non-inventive contributions." Doc. 18 at pp. 59–60 ¶ 16, p. 62 ¶ 26. RJR also alleges that Mr. Conley specifically instructed his attorney not to remove the other named inventors from the '813 application before a February 2013 filing because "misnaming these other inventors suited Mr. Conley's and Fuma's interests." *Id.* at p. 85 ¶ 86.

These allegations are supported by a transcript from state court proceedings in 2015, appended to the counterclaim, in which Mr. Conley testified that he was the true and correct and inventor of patent subject matter but also "tr[ied] to give credit to . . . [a]nybody who helped in any capacity." Doc. 18-14 at 6–7. RJR's allegations are therefore more than just conclusory allegations made "on information and belief." *See CertusView*, 107 F. Supp. 3d at 512.

Fuma contends that Mr. Conley's understanding of who was properly an inventor evolved over time and thus he had no intent to deceive the Patent Office in the initial patent application filings. *See* Doc. 25 at 11–12. But the Court does not weigh the

evidence or decide between conflicting inferences at the motion to dismiss stage. And even assuming Fuma is correct as to Mr. Conley's initial understanding of inventorship, RJR also alleges that Mr. Conley later failed to correct the initial representations as to inventorship in 2016 filings to the Patent Office in order to "expedite[] issuance of the '604 patent without the [Patent Office] independently evaluating the inventorship issue." Doc. 18 at p. 88–89 ¶ 94. On this basis, one can reasonably infer that Mr. Conley had a specific intent to deceive the Patent Office as to certain listed inventors of Fuma's patents after he had developed a full understanding of who qualified as an inventor. *See CertusView*, 107 F. Supp. 3d at 512–13.

To the extent Fuma contends any such misrepresentations as to the identity of the inventors was not material, that is incorrect. "The Federal Circuit has held that misrepresentations regarding inventorship are material." *Id.* at 512 (collecting cases); *see also Caron v. QuicKutz Inc.*, No. CV–09–02600–PHX–NVW, 2012 WL 5497869, at *5–6 (D. Ariz. Nov. 13, 2012) (holding on summary judgment that defendant showed plaintiff's misrepresentation of a non-inventor as an inventor to the Patent Office for financial reasons was material). Whether RJR can prove Mr. Conley's alleged misrepresentations were "but-for material" such that "the PTO would not have allowed a claim had it been aware of the undisclosed" information, or that Mr. Conley's misrepresentations were "affirmative egregious conduct" such that but-for materiality need not be shown, *see Therasense*, 649 F.3d at 1291–92; *Caron*, 2012 WL 5497869, at *6, is an issue best resolved on a more developed factual record.

Finally, Fuma discusses in detail evidence that, according to Fuma, contradicts any claim that Mr. Conley intended to deceive the Patent Office. *See, e.g.*, Doc. 25 at 11–12 (discussing trial testimony appended to the motion to dismiss). As noted above, it is not the Court's role on a motion to dismiss to decide whether there is "clear and convincing evidence of an intent to deceive," as Fuma contends. *See id.* at 4, 7; *supra* Section I. Instead the Court must consider whether the allegations in the counterclaim, "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

This standard requires the Court to determine whether RJR's counterclaim "recites facts from which the [C]ourt may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." *Delano Farms*, 655 F.3d at 1350; *see also Exergen*, 575 F.3d at 1328. As noted above, RJR has satisfied the requisite pleading requirement for inequitable conduct by Mr. Conley for allegedly misrepresenting non-inventors as inventors, and the Court will therefore deny the motion to dismiss RJR's counterclaim based on these allegations.[6]

---

[6] RJR alleges that, in addition to Mr. Conley, other listed inventors as well as Fuma generally misrepresented the inventors of Fuma's patents. *See, e.g.*, Doc. 18 at p. 75 ¶ 56, p. 81 ¶ 73. However, RJR does not allege any facts supporting an intent to deceive by these other listed inventors or Fuma apart from Mr. Conley, and thus the Court understands RJR to rely on these allegations only in connection with alleged inequitable conduct by Mr. Conley.

### III. Other Alleged Misrepresentations

RJR also contends in its counterclaim that the '604 patent is unenforceable because of three alleged misrepresentations during the application process for this patent, including (*i*) the mischaracterization of a patent examiner's reasons for rejecting patent claims in a response by Fuma to that same examiner, *see* Doc. 18 at pp. 89–90 ¶¶ 97–98; (*ii*) the deliberate concealment of a prior patent application rejection by another examiner in order to "examiner-shop" patent claims, *see id.* at p. 91–95 ¶¶ 99–110; and (*iii*) the failure to disclose prior art. *See id.* at pp. 95–96 ¶¶ 111–16.

Even accepting the allegations of the first misrepresentation as true, RJR does not plausibly allege this misrepresentation was material. *See id.* at pp. 89–90 ¶¶ 97–98. It is not reasonable to infer that a patent examiner relied on an applicant's mischaracterization of the examiner's own prior analysis instead of the examiner's independent recollection and understanding. *See CoStar Realty Inf., Inc. v. CIVIX-DDI, L.L.C.*, 946 F. Supp. 2d 766, 775 (N.D. Ill. 2013) (holding allegations of materiality "implausible" in light of "the court's 'judicial experience and common sense'" (citing *Iqbal*, 556 U.S. at 679)).

As to the other two alleged misrepresentations, Fuma has not shown why these allegations fail to state a claim. In its brief, Fuma largely relies on either unsupported assertions or facts outside of the counterclaim to contend the alleged misrepresentations were not material, *see* Doc. 25 at 18–19 & n.8, but "[t]he Court cannot disregard Defendants' allegations in favor of a factual assertion by Plaintiff." *CertusView*, 107 F. Supp. 3d at 522 n.17 (citing *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012)). Fuma does not otherwise contend that RJR's allegations

11

as to these misrepresentations lack the requisite particularity or fail to provide a reasonable basis for inferring a specific intent to deceive the Patent Office. *See Exergen*, 575 F.3d at 1328–29. Accordingly, the motion to dismiss the counterclaim based on these two misrepresentations is denied.

## IV. Conclusion

The pleading standard for inequitable conduct requires particularity under Rule 9(b) and a reasonable basis for inferring materiality and intent. While a party must adequately plead inequitable conduct, it need not prove there is clear and convincing evidence for all elements of this claim to survive a motion to dismiss. RJR has adequately pled inequitable conduct by Mr. Conley for allegedly misrepresenting non-inventors as inventors of subject matter underlying Fuma's patents, and inequitable conduct by Mr. Conley and Fuma's patent counsel for deliberately concealing or failing to disclose other material information and prior art. RJR's counterclaim may therefore proceed on these grounds, but the motion to dismiss will be granted to the extent RJR relies on allegations of other inequitable conduct by other individuals.

Accordingly, it is **ORDERED** that the plaintiff's motion to dismiss the defendant's counterclaims, Doc. 24, is **DENIED in part** and **GRANTED in part**, as set forth herein.

This the 12th day of July, 2019.

_____
UNITED STATES DISTRICT JUDGE