IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FUMA INTERNATIONAL LLC,<br>an Ohio limited liability company,<br><br>*Plaintiff/Counterdefendant,*<br>v.<br>R.J. REYNOLDS VAPOR COMPANY,<br>a North Carolina corporation,<br><br>*Defendant/Counterplaintiff.* | Civil Action No. 1:19-cv-260<br>and<br>Civil Action No. 1:19-cv-660 |

**R.J. REYNOLDS VAPOR COMPANY'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO COMPEL
<u>PLAINTIFF TO RESPOND TO WRITTEN DISCOVERY</u>**

**I.   Reply Arguments[1]**

**A.   Fuma Should Be Required to Identify the Internal Structure and all Components of the Smoke 51 Duo of Which it is Aware, and to Explain how they Differ from the Asserted Claims.**

In an attempt to narrow the disputed issues relevant to the materiality of the Smoke Fifty-One Duo in connection with the approaching date by which summary judgment motions on Reynolds's inequitable conduct affirmative defense and

---

[1] Fuma's opening brief begins by citing snippets from Reynolds's documents to argue that Reynolds copied Fuma's commercial product. (Dkt. 60, at pp. 1-2.) Putting aside the fact that Reynolds did not copy and that Fuma has misinterpreted these snippets, Fuma's "Factual Summary" is a sideshow that has no bearing on the merits of Reynolds's motion. Suffice it to say that Reynolds denies the allegations and will demonstrate why they are false at the appropriate time.

1
Reynolds's Reply Memorandum ISO Motion to Compel Written Discovery

counterclaim may be filed, several months ago Reynolds served a tailored interrogatory asking Fuma to: (a) identify any Smoke 51 e-cigarettes it or the named inventors obtained, advertised or distributed prior to August 1, 2009;[2] (b) ***describe the internal structure and components*** of each such device; and (c) explain how the structure and components of each such device "***differs, if at all, from the structure and components recited in each Asserted Claim***." (*See* Dkt. 57, at Ex. E, Interrogatory 12) (emphasis added.) Fuma's response confirms that Fuma possesses the information necessary to respond to this interrogatory: Fuma admits that Mr. Conley obtained and sold Smoke 51 Duo devices prior to August 1, 2009, that Mr. Conley "tore them apart and looked at them," and that Mr. Conley sketched the device's internal structure. But, rather than responding to the Interrogatory with ***its contentions***, Fuma insists that Reynolds should interpret Mr. Conley's sketches (and hundreds of other documents that Fuma now admits do not pertain to the internal structure of the Smoke 51 Duo), and extrapolate from Fuma's answer to the counterclaim, to deduce Fuma's positions on these important issues. That approach

---

[2] Fuma's response wrongly suggests that Reynolds expects Fuma to provide information regarding versions of the Smoke 51 Duo that Fuma has purportedly never seen. Reynolds does not, and instead merely contends that Fuma should be required to fully respond to Interrogatory No. 12 with information it has regarding the Smoke 51 Duo devices that Fuma admittedly possessed and deconstructed prior to filing the applications leading to the asserted patents.

2
Reynolds's Reply Memorandum ISO Motion to Compel Written Discovery

Case 1:19-cv-00260-CCE-JLW   Document 62   Filed 11/29/19   Page 2 of 16

ignores the purpose of contention interrogatories, and allows Fuma to avoid taking a position on some of the core issues in this case.

For example, Mr. Conley's sketches are not necessarily commensurate with Fuma's knowledge of the Smoke 51 Duo. Mr. Conley's sketches appear to show a portion of a cartridge, but they do not show the electrically conductive threaded portions that Fuma's answer admits existed, or any aspect of the power unit. (*See* Dkt. 60, at 5-6.) Fuma undoubtedly has more knowledge of the Smoke 51 device sufficient to provide its position regarding whether it had other basic claim elements (*e.g.*, the presence of a power source that included a battery).

In other words, Conley's sketches and Fuma's answer to certain counterclaim allegations tell only part of the story. Reynolds is entitled to Fuma's knowledge about ***all*** of the components of the Smoke 51 Duo that the Conleys and Hillenbrandt were selling, and how Fuma contends that device differed, if at all, from the structure and components recited in each claim of the asserted patents.

As another example, in its brief Fuma asserts that the heating element in Mr. Conley's sketch is located "outside the air flow" because Mr. Conley's sketch purportedly shows that the "arrow labeled 'Heater' points to a location outside the air flow." (Dkt. 60, at p. 5 n.1.). To support that argument, on page five of its brief Fuma superimposed only a portion of the document containing Mr. Conley's sketch, and omitted Mr. Conley's handwriting beside the sketch describing the Fifty-One

Duo as having a "heating element in or around center of air flow." (Compare Dkt. 60 at p. 5 to Ex. D to Reynolds's Opening Brief, FUMA00007750.) Nevertheless, Fuma refuses to provide a response to Interrogatory 12 that compares the heating element of the Smoke 51 device to the actual claim language. This is significant because some of the claims, such as Claim 1 of the 604 Patent (from which asserted Claim 4 depends), merely require the heating element to be located in the cartridge; not in the airflow passageway.[3] Reynolds should not be forced to guess Fuma's contention as to whether the Smoke 51 Duo embodied those elements.

As another example, although Fuma's answer to the counterclaim generally admits that the Smoke 51 Duo had a central airflow passageway and a liquid storage medium surrounding that passageway, it has not provided any information in response to Interrogatory No. 12 explaining how, if at all, those structural features meet or differ from the limitations of the asserted claims, such as:

- "wherein the housing includes an airflow passageway that extends centrally and axially with respect to the housing intermediate of the first aperture on the first end of the housing and the second aperture on the second end of the housing, wherein the airflow passageway is configured to allow art [sic, an] airflow through the cartridge from the first aperture to the second aperture of the housing"; and

---

[3] To prevail on its inequitable conduct affirmative defense and counterclaim Reynolds need only show that the Smoke Fifty-One Duo was material to at least one issued claim (in addition to Fuma's deceptive intent). *Baxter Intern., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998) (inequitable conduct with respect to one claim renders the entire patent unenforceable).

- "wherein the housing includes a solution holding medium comprising a solution located in the interior of the housing, wherein the solution holding medium surrounds the airflow passageway in the interior or the housing and intermediate of the first end and the second end."

(*See*, *e.g.*, Claim 1 of '604 Patent.) If Fuma knows that the central air passageway and absorbent material of the Smoke 51 Duo met these limitations, it should acknowledge that fact in response to Interrogatory 12, narrowing the disputed issues. Conversely, if Fuma contends the central air passageway and absorbent material of the Smoke 51 device were different from the claimed limitations, then it should be required to explain those differences in response to Interrogatory No. 12.

As yet another example, Claim 1 of the '604 Patent claims a vaporized solution provided to "an individual in the airflow from the second aperture (i.e. air flows out of the mouthpiece opening to the user)," without specifying where in the housing the solution is vaporized. Fuma's non-answer to Interrogatory No. 12 avoids providing a clear answer to whether it contends this limitation is met by the Smoke 51 device it sold prior to filing the relevant patent applications.

These are just a few examples in which Fuma's incomplete interrogatory response fails to narrow the issues in dispute, and leaves Reynolds (and ultimately the Court) to guess at Fuma's knowledge of the structure and internal components of the Smoke 51 Duo, and its position as to whether that structure differs from the asserted claims. As made clear by both parties' briefs, such issues are directly

5
Reynolds's Reply Memorandum ISO Motion to Compel Written Discovery

Case 1:19-cv-00260-CCE-JLW   Document 62   Filed 11/29/19   Page 5 of 16

relevant to the impending inequitable conduct motions. *See also*, *Therasense*, 649 F.3d at 1292 (a withheld reference is material if there are no patentable differences between the claimed invention and the withheld reference). Fuma should thus be compelled to promptly provide a fulsome response to Interrogatory No. 12. *See U.S. S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 577 (M.D.N.C. 2002) (holding reference to documents in response to interrogatories seeking contentions of fact or law was improper because "[o]nly plaintiff can identify its own contentions and the burden on defendants to try and divine plaintiff's contentions from documents obviously imposes a greatly unequal burden on defendants"); *Morock v. Chautauqua Airlines, Inc.*, 2007 WL 4247767, at *2 (M.D. Fla. Dec. 3, 2007) (reference to documents to answer interrogatories is generally "appropriate when the interrogatory requests objective facts that are obvious from the specified documents, but is generally inappropriate when the interrogatory asks a party to state its contentions or to state facts supporting its allegations"); *United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 420 (D. Md. 2005) (a party has the right to know the opposing party's contentions without reference to documents); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 49 (N.D.N.Y. 1997) (reference to documents was improper response to interrogatory requiring "plaintiff to 'state the facts' supporting various allegations," not provide evidence or documents supporting those facts).

### B. Reynolds's Motion is not Premature.

#### 1. Relevant Patent Cases Support Reynolds's Position, and the Patent Cases Fuma Relies on are Inapposite.

Relevant patent holdings make clear that Reynolds's interrogatory is not premature, and that it is an appropriate mechanism to clarify the issues in advance of summary judgment briefing. *See*, *e.g.*, *ParkerVision, Inc. v. Qualcomm Inc.*, 2015 WL 13792070, at *1 (M.D. Fla. Aug. 17, 2015) (requiring plaintiff to respond to an interrogatory seeking "the legal and factual basis for [Plaintiff's] contention, if any, that the references discussed in the charts to Defendants' Invalidity Contentions do not anticipate and/or render obvious the Asserted Claim (3) including identifying each limitation [Plaintiff] contends is not disclosed by each specific prior art reference and (4) the factual and legal basis for such contention"); *Finjan, Inc. v. ESET, LLC*, 2018 WL 4772124, at *4 (S.D. Cal. Oct. 3, 2018), *review denied*, 2018 WL 6075797 (S.D. Cal. Nov. 21, 2018) (requiring plaintiff to respond to a narrowed interrogatory requesting it "to explain the principal and material factual and legal bases for it position that the patents-in-suit are not invalid based on the prior art cited by [Defendant]"); *Mirror Worlds Techs., LLC v. Apple Inc.*, 2014 WL 12614490, at *2 (E.D. Tex. Dec. 3, 2014) (requiring plaintiff to respond to an interrogatory seeking its contentions for why asserted claims were not invalid as to 5 of the 24 prior art references chosen by defendant); *Cold Spring Granit Co. v. Matthews Int'l Corp.*, 2012 WL 1306738 at *8-11 (D. Minn. Aug. 20, 2012)

(requiring defendant to respond to interrogatories seeking explanation of differences between prior art and the asserted patent claims, notwithstanding defendant's objections that the interrogatories were premature and sought information subject to expert disclosures); *B. Braun Medical Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Penn. 1994) (requiring defendant to respond to interrogatories regarding the scope of the prior art because they related to defendant's obviousness claim and thus would "serve to clarify the issues and narrow the scope of the dispute.").

These holdings apply with particular force here, as the parties requested, and the Court entered, an early date by which summary judgment motions on inequitable conduct may be filed, which precedes by several months the deadlines for claim construction ruling and completing fact and expert discovery. Fuma's contention that it should not be required to provide the requested information until after claim construction,[4] and only then through expert discovery, is thus wrong for this additional reason.

The only two patent cases Fuma relies on that relate to discovery motions are inapposite. While the courts in *Bonutti* and *IP Innovation* did not require the patentees to disclose their positions with respect to defendants' invalidity analyses until expert reports had been exchanged, the interrogatory requests in those cases

---

[4] Fuma's claim construction argument is also misplaced considering its position that nearly all of the disputed claim terms should be given their "ordinary meaning." (*See* Dkt. 61.)

were not only substantially broader than Reynolds's, but also there were no impending summary judgment motions involving the issue of materiality. *Bonutti Skeletal Innovations LLC v. Linvatec Corp.*, No. 6:12-cv-1379-ORL-22TBS, 2014 WL 186123, at *4 (M.D. Fla. Jan. 16, 2014); *IP Innovation, LLC v. Sharp Corp.*, 219 F.R.D. 427, 429–30 (N.D. Ill. 2003). For example, in *Bonutti*, the defendant sought "all factual and legal bases to support, on a claim-by-claim and limitation-by-limitation basis…that the asserted claims of the Patents-in-Suit are not invalid." 2014 WL 186123, at *1. And in *IP Innovation*, the plaintiffs sought "a claim by claim and element by element comparison of *any* prior art or other invalidity defenses." 219 F.R.D. at 429 (emphasis added). By contrast, Reynolds's interrogatory pertains to a single prior art reference that Fuma admittedly deconstructed and sold prior to filing the relevant patent applications, and is thus much narrower, more reasonable, and pertinent.[5]

### 2. Reynolds was not Required to Take the Purported Inventors Depositions, or Wait for Fuma's Responses to Subsequent Interrogatories, Prior to Filing the Motion.

Fuma's argument that Reynolds should obtain the requested information from depositions of the purported inventors, is also misplaced. Indeed, if the purported inventors (who are owners and officers of Fuma) have information that will assist

---

[5] In fact, Interrogatory No. 12 is much narrower than the discovery requests that were found proper in the cases Reynolds cites above.

9
Reynolds's Reply Memorandum ISO Motion to Compel Written Discovery

Case 1:19-cv-00260-CCE-JLW   Document 62   Filed 11/29/19   Page 9 of 16

Fuma in responding to Interrogatory No. 12, then it is incumbent upon Fuma to gather that information and provide it in a response to the interrogatory. *See*, *e.g.*, *U.S. S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002) (holding that reference to deposition testimony to identify contentions of fact or law was improper because "[a] party reveals its contentions," not documents or witnesses); *Morock v. Chautauqua Airlines, Inc.*, 2007 WL 4247767, at *1 (M.D. Fla. Dec. 3, 2007) (since "a party is entitled to discovery both by deposition and interrogatory, it is ordinarily insufficient to answer an interrogatory by reference to" deposition testimony).

Fuma reliance on *Zubrod v. Hoch*, 2016 U.S. Dist. LEXIS 58319, at *21 (N.D. Iowa May 2, 2016), does not help Fuma's argument. In *Zubrod*, the plaintiff refused to answer the defendant's contention interrogatories until it had an opportunity to gather more information through depositions of the ***defendant's*** witnesses. *Id*. at *15–16. By contrast, Fuma does not allege that it lacks sufficient information to answer Interrogatory No. 12, but instead argues that in lieu of Fuma providing a formal and complete response, Reynolds should depose Fuma's witnesses to fill in the gaps. (*See* Dkt. 61, at p. 9.) Such a result is non-sensical and would largely obviate a litigant's right to serve interrogatories.

Finally, Fuma's suggestion that Reynolds should have waited for Fuma's responses to Interrogatory Nos. 14 and 15 prior to filing the motion, is wrong. In response to Interrogatory No. 14, Fuma merely claimed (without explaining how and

when) that it did disclose the Smoke 51 Duo to the USPTO during prosecution of each application in the family of the asserted patents. (Ex. A, Fuma's Response to Interrogatory No. 14.) That response contains no discussion about the components of the Smoke 51 Duo or how they differed from the elements of the Asserted Claims. *Id*. Regarding Interrogatory 15, it likewise does not request the information sought by Interrogatory No. 12, but instead an explanation of whether Fuma believes the Smoke 51 Duo was cumulative of prior art that was submitted to the USPTO and how Fuma's decision to conceal that device from the USPTO was without deceptive intent. (*See* Dkt. 60, at Ex. 7.)

### 3. Counsel did Meet and Confer per the Local Rules.

As a final matter, the undersigned (Ralph Gabric)[6] takes seriously his obligations under the Local Rules, and confirms that to the best of his recollection, Interrogatory No. 12 was raised during the September 17, 2019 meet and confer teleconference. The issue arose because Fuma's initial response to the interrogatory just cited to hundreds of documents, and contained no discussion of the Smoke 51 Duo whatsoever. Because those documents (as Fuma now admits) do not show the internal structure of the Smoke 51 Duo or how the Smoke 51 Duo sold by Conley and Fuma differs from the elements of the asserted claims, Reynolds conveyed its belief that Fuma's response to Interrogatory No. 12 was deficient. Reynolds then

---

[6] John Morrow was not on the call.

11
Reynolds's Reply Memorandum ISO Motion to Compel Written Discovery

Case 1:19-cv-00260-CCE-JLW   Document 62   Filed 11/29/19   Page 11 of 16

followed up via email, after which the parties engaged in multiple protracted written exchanges over several weeks in which Reynolds continued to press for additional information, and ultimately, Fuma provided limited supplementation. However, as confirmed by Fuma's supplemental response and even Fuma's response brief, throughout the process and to date Fuma has maintained its refusal to: (a) fully describe the internal structure and components of the Smoke 51 Duo as know by Fuma, or (b) explain how the structure and components of that device "differ, if at all, from the structure and components recited in each Asserted Claim." Fuma's continued refusal to provide the requested information further confirms the parties' impasse.[7]

## II.  Conclusion

For the reasons provided above, Reynolds respectfully requests that the Court compel Fuma to immediately supplement its response to Interrogatory 12 by identifying: (1) the internal structure and *all* of the components of the Smoke 51 Duo that Fuma/Mr. Conley deconstructed and had knowledge of prior to the purported

---

[7] The undersigned is also keenly aware that the Court encourages parties to resolve discovery disputes without court intervention unless absolutely necessary. Reynolds made a good faith effort to do just that, as confirmed by the extensive exchanges that spanned several weeks following the original meet and confer and before the motion was filed, and Fuma's continued refusal to provide the requested information. Indeed, if Fuma truly believed the motion was premature or filed without the appropriate meet and confer, it should have contacted the undersigned immediately after the motion was filed. It did not do so.

invention of the patents in suit, and (2) the ***differences*** between that Smoke 51 device

and the limitations of each of the asserted claims of the asserted patents.

Dated:  November 29, 2019         <u>/s/     Ralph J. Gabric</u>
                                  <u>/s/     John F. Morrow, Jr.</u>
                                  John F. Morrow, Jr. (N.C. Bar No. 23382)
                                  Ana J. Friedman (N.C. Bar No. 53117)
                                  WOMBLE BOND DICKINSON (US) LLP
                                  One West Fourth Street
                                  Winston-Salem, NC 27101
                                  Telephone:  (336) 721-3584
                                  Fax:  (336) 733-8429
                                  John.Morrow@wbd-us.com
                                  Ana.Friedman@wbd-us.com

                                  OF COUNSEL:

                                  Ralph J. Gabric
                                  IL Bar No. 6198485
                                  ralph.gabric@haynesboone.com
                                  Laura Beth Miller
                                  IL Bar No. 6191408
                                  laura.miller@haynesboone.com
                                  HAYNES AND BOONE, LLP
                                  180 N. LaSalle, Suite 2215
                                  Chicago, IL 60601
                                  Telephone: (312) 216-1620
                                  Fax: (312) 216-1621

                                  Eva Zhao
                                  eva.zhao@haynesboone.com
                                  HAYNES AND BOONE, LLP
                                  800 17th Street NW, Suite 500
                                  Washington, D.C. 20006
                                  Telephone: (202) 654-4506
                                  Fax: (202) 654-4501

Attorneys for
Defendant/Counterplaintiff
***R.J. REYNOLDS VAPOR COMPANY***

## WORD COUNT CERTIFICATION

The undersigned certifies that this brief complies with the word count limitation of Local Rule 7.3(d).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system on November 29, 2019.

Dated: November 29, 2019  /s/*John F. Morrow, Jr.*
John F. Morrow, Jr.