# EXHIBIT 2

| | |
|---|---|
| **FUMA INTERNATIONAL, LLC,** | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:19-CV-00260-CCE-JEP |
| **R.J. REYNOLDS VAPOR COMPANY,** | ) ) ) |
| Defendant. | ) ) ) |

RESPONSIVE EXPERT REPORT
STEPHEN A. HOLZEN

SEPTEMBER 4, 2020

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1
    A. Background ................................................................................................... 1
    B. Assignment ................................................................................................... 1
    C. Qualifications ............................................................................................... 1
    D. Assumptions ................................................................................................. 1
    E. Evidence Considered .................................................................................... 1
II. SUMMARY OF OPINIONS .................................................................................... 2
III. OVERVIEW OF MS. DISTLER'S OPINIONS ...................................................... 2
IV. REBUTTAL OPINIONS ........................................................................................... 3
    A. The Use of a Per-Unit Royalty Rate Structure is Unreliable ....................... 3
    B. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ................................................................... 4
    C. There are no Commercially Acceptable Non-Infringing Alternatives ........ 8
    D. The TNS Survey Data Is Not Reliable ....................................................... 11
    E. Profit Margin Calculations ......................................................................... 17
    F. Competition Between Fuma and RRJV ..................................................... 18
    G. RJRV's Future Expectations ...................................................................... 18
V. RESPONSIVE OPINIONS ..................................................................................... 19
    A. Drivers of Demand ..................................................................................... 19
    B. The Bill of Materials Analysis ................................................................... 21
    C. Revenue Projections ................................................................................... 22
    D. The Income Approach ................................................................................ 23
    E. Newly Produced Financials ....................................................................... 25
VI. CONCLUSIONS ..................................................................................................... 28
VII. POSSIBLE REVISIONS TO THIS REPORT ..................................................... 28
VIII. PROFESSIONAL FEE ARRANGEMENT ......................................................... 28

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

77. As an initial matter, to the extent to which demand in the industry had shifted from cig-a-like devices to pod-devices, flavors, and other styles, that fact is already reflected in RJRV's 2017 projections and any uncertainty in that regard is accounted for through the application of a discount rate. I also note that the issues regarding e-juice atomization in a cig-a-like device were not an issue for RJRV in 2017 because those issues were resolved by the Patents-in-Suit . Furthermore, I accounted for the value of the batteries, microprocessors, and LEDs as part of my apportionment analysis which excludes the value of these elements from the royalty.  It is also worth noting that Ms. Distler's arguments in this regard are incompatible with her opinion that the value of the Patents-in-Suit increase relative to the total revenue value of the embodying products from 2017 ▮ to 2020 ▮ .

   **B.     The Bill of Materials Analysis**

78. Ms. Distler suggests that I have not allocated any value to other elements or sub-components that are attributable to non-patented elements.[128]  In support of this conclusion she notes that certain of the claimed elements are found in the prior art or non-infringing alternatives and that some these elements serve multiple purposes.[129]

79. Ms. Distler's statements appear to rest on technical arguments as to which elements or combination of elements were novel or nonobvious.  I understand that there is a difference between patented features and novel features in that patented features include both the conventional features recited by the claims as well as the novel ones.[130]  In short, Ms. Distler does not acknowledge that a unique combination of conventional elements can improve the value of those conventional elements.[131]

80. She also notes that RJRV has modified the materials of construction overtime and for example, suggests my analysis overstates the value of the Patents-in-Suit because my BOM Analysis is based on the cost of stainless-steel tubing, which is more expensive than plastic tubing.  It is unclear why this is a relevant point because a BOM Analysis does not assess the cost of one component in a vacuum.  Instead it tracks the cost changes of multiple components relative to each other.  As illustrated in Exhibit 19 of the Affirmative Holzen Report my BOM Analysis was performed each year from 2014 through 2020 and shows a range of allocation rates ▮  This means that the available allocation rates are consistent for all years in the analysis.  I also note that my allocation rate of ▮ is the lowest rate of allocation.  In other words, if I were to adopt a different year as the basis for selecting the allocation rate my damages would have been greater.

---

[128] Distler Responses Report, August 21, 2020, paragraph 212.
[129] Distler Responses Report, August 21, 2020, paragraph 213-215.
[130] Exmark Manufacturing Company Inc. vs. Briggs & Stratton Power Products Group LLC (Federal Circuit, 2016) https://www.ipwatchdog.com/2018/02/26/damages-opinions-exmark-finjan/id=94092/
[131] Astrazeneca vs. Apotex Corp. (Federal Circuit 2014) ("…it is improper to assume that a conventional element cannot be rendered more valuable by its use in combination with an invention" and "It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages. For a patent that combines "old elements," removing the value of all of those elements would mean that nothing would remain.").
21

81. It is unclear why Ms. Distler criticizes my BOM Analysis for including a power unit when the BOM Analysis I rely upon does not include a power unit. As illustrated in Exhibit 19 of the Affirmative Holzen Report, I base my BOM Analysis off of the costs incurred to manufacture the cartridges which exclude the value of the battery (as illustrated in Exhibit 20). Had I included the cost of the battery in my BOM Analysis, then my damages would have been materially greater.

82. Ms. Distler also notes that Dr. Collin's opines that "numerous factors contribute to the amount of vapor created, including for example, the amount and duration of heat applied to the liquid and the amount and composition of solution being heated" and that these factors are not covered by the asserted claims.[132] It is my understanding the '604 patent claims the e-liquid ("….comprising a solution located in the interior of the housing…") which means the patented invention includes the e-liquid regardless of its chemical composition.[133]

83. Ms. Distler points out that RJRV added technologies such as the "encryption technology to prevent the use of imitation cartridges in the Solo power unit and a LED indicator and user interface to communicate the status of the battery life and the cartridge life.[134] All of these elements are included in the battery and, as discussed, my BOM Analysis allocates the value of these alleged improvements to RJRV.

### C. Revenue Projections

84. Ms. Distler claims that the use of "positive growth rates to project sales of the Accused Products is in direct conflict with the historic sales trends for the Accused Products and RJRV's projections for the Accused Products".[135] I disagree. Ms. Distler fails to consider future revenue projections are discounted to account for the risk of achieving the projected amounts. As illustrated in Exhibit 2a of the Affirmative Holzen Report one of my projections uses a revenue growth rate of 3% and a discount rate of 12.46%. What this means is that in present value terms, my revenue projections are declining. Also, it is reasonable to assume that RJRV would increase its average selling price of its product by 3% so as to pass expected increases in materials costs through to its customers.

85. In addition, and as illustrated in Exhibit 2b of the Affirmative Holzen Report, my other projection assumes a revenue growth rate of 8% and a discount rate of 11%. What this means is that in present value terms my revenue growth rates are declining. Considering these facts, it is my opinion that my future growth rate projections are consistent RJRV's historical sales trends. In addition, I note that RJRV has the advantage of early approval authorization by the FDA which is effectively an endorsement that a product is safe (at least in hardware sense) and beneficial for public health (less dangerous than

---

[132] Distler Responses Report, August 21, 2020, paragraph 31.
[133] Discussion with Dr. Vallee.
[134] Distler Responses Report, August 21, 2020, paragraph 31.
[135] Distler Responsive Report, August 21, 2020, paragraph 193.

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

Case 1:19-cv-00260-CCE-JEP   Document 183-2   Filed 07/29/21   Page 5 of 9

cigarettes).[136] This endorsement could prove particularly beneficial in the current environment.[137]

86. Ms. Distler correctly noted that different combinations of growth rates and discount rates impact the lump sum royalty calculation. In response to her report, and RJRV's new financial production, I have performed a third scenario analysis which assumes 0.0% growth and a 3.0% discount rate. The 0.0% growth is reasonable because it assumes that RJRV will not increase its revenue from 2020 through patent expiration and, as noted above, RJRV has the competitive advantage of having submitted its PMTA application first, potentially making it the first company to offer government approved vaping devices. The 3% discount rate is reasonable because it discounts for the expected impact of inflation on the revenue amounts. And what this means is that my future revenue projections would reflect a 3% annual revenue decline in present value terms. Based on this scenario analysis, and as further detailed below, the reasonable royalty damages for the running royalty structure would be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the lump sum.[138]

### D. The Income Approach

87. As part of the Affirmative Holzen Report, I presented an analysis I performed of the profits that RJRV earned from the sale of Accused Products.[139] As part of this analysis, I reviewed Standard Profit, Gross Profits, and Operating Profits. Based on my analysis, I concluded that RJRV's 2017 Gross Profit of ▮▮▮▮ from the sale of the Accused Products provided an indication of the profits that RJRV expected to earn after it had achieved its other priorities (national expansion and market share.)[140]

88. I then analyzed and concluded that given RJRV's razor blade business model, the 2017 Gross Profit of ▮▮▮▮ that it earned from the sale of the Accused Cartridges provided a second indication of the profits that RJRV expected to earn after it achieved its other priorities (national expansion and market share).[141]

89. Then in recognition of the fact that RJRV has contributed its own manufacturing processes, has taken on the business risks of selling Fuma's patented invention at a national scale and is managing the process of distributing the Accused Products through thousands of its retail customers, I apportioned the two profit indicators noted above ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ using my BOM Analysis.

90. As part of the BOM Analysis, I reviewed the BOM of the Solo Cartridge and based on conversations with Dr. Vallee, identified which components related to the Patents-in-Suit. I then apportioned the Gross Profits RJRV earned from the sale of Accused Products

---

[136] British American Tobacco, PMTA for Vuse Solo submitted: Being First a Competitive Advantage, October 11, 2019.
[137] British American Tobacco, PMTA for Vuse Solo submitted: Being First a Competitive Advantage, October 11, 2019.
[138] See Alternative Exhibit 1.
[139] Affirmative Holzen Report, paragraph 176.
[140] Affirmative Holzen Report, August 21, 2020, paragraph 182.
[141] Affirmative Holzen Report, August 21, 2020, paragraph 185.

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

from Counsel that Fuma has not been given the opportunity to depose Mr. Perrish and/or Mr. Decker.  According to counsel, the court may find that RJRV's newly produced financial information is inadmissible to the record.  Assuming that the Court rules that RJRV's newly produced financial information is inadmissible then the amounts presented in the Affirmative Holzen Report remain unchanged.

100. Assuming that the Court rules that RJRV's newly produced financial information is admissible, then I incorporated it into an alternative damages analysis (the "Alternative Analysis").  There are two primary differences between the original analysis and the Alternative Analysis.

    - The first difference relates to my use of the newly produced 2019 financial information.  I have estimated RJRV's 2019 Accused Products net revenue to be ▓▓▓▓▓.[152] This is ▓▓▓▓▓ lower than the amounts I estimated in the original analysis. The newly produced 2019 financial information indicates that RJRV's net revenues ▓▓▓ from 2017 ▓▓▓▓▓ to 2019 ▓▓▓▓▓.[153]

    - The second difference relates to my projection of revenue from the end of 2019 through the first quarter of 2021 (the estimated date of trial).  I first estimate RJRV's January-June 2020 revenues ▓▓▓▓▓[154] I then estimate RJRV's full year revenue ▓▓▓▓▓ based on the 2019 quarterly revenue trends.[155] I then estimate the revenue that RJRV will earn in 2021 ▓▓▓▓▓▓▓▓▓▓ using an annual growth rate of either 3% or ▓ as applied to the 2019 Accused Revenue.[156] It is reasonable to assume a 3% or ▓ annual growth rate as discussed throughout this report and because industry analysts indicate that RJRV will enjoy a competitive advantage when the FDA approves its PMTA since the approval will act as an endorsement that the Solo is safe.[157] The approval would prove to be particularly beneficial to RJRV since no other competitive products will be approved by the FDA.

101. As illustrated in Alternative Exhibit 1, I then calculate the royalty base for the running royalty structure for Alternative Scenario 1 and 2 ▓▓▓▓▓▓▓▓▓▓ by adding RJRV's revenues from July 1, 2017 through March 31, 2021.  I then calculate the royalty due to Fuma for the Alternative Scenario 1 and 2 running royalty structure ▓▓▓ ▓▓▓▓▓▓▓▓▓▓ by multiplying the Alternative Scenario 1 and 2 royalty base ▓▓▓▓▓▓▓▓▓▓ by the 14% royalty rate.

102. In order to calculate the royalty amounts for the lump sum structure, I project RJRV's Accused Product revenue from July 1, 2020 through July 27, 2030 ▓▓▓▓▓ ▓▓▓▓▓ using an annual growth rate of either 3% or ▓[158] These are reasonable

---

[152] See Alternative Exhibit 3a and 3b and 3c.
[153] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
[154] See Alternative Exhibit 6a.
[155] See Alternative Exhibit 6a.
[156] See Alternative Exhibit 6a and 6b.
[157] British American Tobacco, PMTA for Vuse Solo submitted:  Being First a Competitive Advantage, October 11, 2019.
[158] See Alternative Exhibit 2a and 2b.

26

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

growth rates as discussed throughout this report and because industry analysts indicate that RJRV will enjoy a competitive advantage when the FDA approves its PMTA since the approval will act as an endorsement that the Solo is safe.[159] The approval would prove to be particularly beneficial to RJRV since no other competitive products would have yet been approved by the FDA.

103. I then calculate the revenue base for the lump sum amounts for ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ by adding the July 1, 2017 to December 31, 2019 Accused Product Net Revenue ▇▇▇▇▇▇▇▇▇▇ to the January 1, 2020 to July 27, 2030 projected Net Revenues ▇▇▇▇▇▇▇▇▇▇.[160]

104. I discounted the Lump Sum Net Revenues back to January 3, 2017 because that is the date of the hypothetical negotiation.

- Alternative Scenario 1: Under the first scenario, which assumes a 3% growth rate per year and a 12.46% discount rate, the present value of RJRV's Accused Product Net Revenue is approximately ▇▇▇▇▇▇ as of January 3, 2017.[161]

- Alternative Scenario 2: Under the second scenario, which assumes an ▇▇ growth rate per year and a 11% discount rate, the present value of RJRV's Accused Product Net Revenue is approximately ▇▇▇▇▇▇ as of January 3, 2017.[162]

105. As illustrated in Alternative Exhibit 1, I then calculate the royalty due to Fuma for the lump sum structure ▇▇▇▇▇▇▇▇▇▇▇▇▇ by multiplying the royalty base ▇▇▇▇▇▇▇▇▇▇▇▇▇ by the royalty rate 14%.

106. As previously discussed, Ms. Distler notes that different combinations of growth rates and discount rates impact the lump sum royalty calculation. In response to her report, and RJRV's new financial production, I have performed a third scenario analysis which assumes a 0% growth and a 3% discount rate.

- The 0% growth is reasonable because it assumes that RJRV will not increase its revenue from 2020 through patent expiration and, as noted above RJRV has the competitive advantage of having submitted its PMTA application first which means that it could be the first company to offer government approved vaping devices. In addition, a 0% growth rate is reasonable because it means that RJRV will not attempt to pass through expected increases in manufacturing costs. Furthermore, the record evidence indicates RJRV was projecting its Solo revenue growth to be ▇▇ per year.

- The 3% discount rate is reasonable because it discounts for the expected impact of inflation on the revenue amounts. This is a reasonable amount because it is greater than the risk-free rate of 2.78% (the 20-year treasury yield on January 3, 2017).

---

[159] British American Tobacco, PMTA for Vuse Solo submitted: Being First a Competitive Advantage, October 11, 2019.
[160] See Alternative Exhibit 2.a and 2.b
[161] See Alternative Exhibit 2.a.
[162] See Alternative Exhibit 2.b.

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

Case 1:19-cv-00260-CCE-JEP   Document 183-2   Filed 07/29/21   Page 8 of 9

107. Taken together a 0% growth rate and a 3% discount mean that the future revenue projections would reflect a 3% annual decline in present value terms. Based on these variables the reasonable royalty damages for the running royalty structure would be ▮ ▮ for the lump sum structure.[163]

## VI. CONCLUSIONS

108. It is my opinion that Ms. Distler makes selective decisions as to which assumptions she uses in her cost approach, market approach and income approach, to emphasize a result that supports her client's position, while ignoring or dismissing any data that does not support it. These issues render her conclusions reasonable royalties unreliable and unreasonable.

## VII. POSSIBLE REVISIONS TO THIS REPORT

109. The opinions expressed herein are based on the information made available to me as of the date of this report. I reserve the right to review any information produced by the parties subsequent to the date of this report and update this report as necessary to reflect any additional analysis and conclusions. In addition, if the Defendant submits any additional opinions regarding damages, I reserve the right to review these analyses and respond if necessary.

## VIII. PROFESSIONAL FEE ARRANGEMENT

110. My billing rate is $450 per hour for services performed in connection with this matter. In addition, I will be reimbursed for all reasonable out-of-pocket expenses incurred in connection with my analyses and testimony in this case. Neither my compensation, nor Stout's compensation, is dependent on the outcome of this matter or the opinions expressed in this report.

*/s/ Stephen Holzen*
Stephen Holzen
September 4, 2020

---

[163] See Alternative Exhibit 1.