IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FUMA INTERNATIONAL LLC, an Ohio limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>R.J. REYNOLDS VAPOR COMPANY, a North Carolina corporation,<br><br>Defendant. | Civ. No. 1:19-cv-260 [Lead Case]<br><br>Civ. No. 1:19-cv-660 |

**PLAINTIFF FUMA INTERNATIONAL LLC'S REPLY IN SUPPORT OF FUMA'S MOTIONS IN LIMINE**

# TABLE OF CONTENTS

I. PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTIONS IN LIMINE ("MILS") ................................................................................. 1

    A. Irrelevant and Unfairly Prejudicial Personal History of Mr. Conley ............ 1

    B. Pre-suit Communications Between Dirk Thomas and Ralph Gabric ............ 2

    C. Limiting RJR to its Narrowed Election of Prior Art References and Obviousness Combinations ................................................................. 2

    D. RJR's Withholding Discovery of Other Development Efforts ..................... 3

    E. Precluding Shanhong Wang's Declaration and Evidence ............................ 4

    F. No Prior Fuma Litigation ............................................................................. 5

    G. No Allegations of Improper Inventorship ................................................... 5

    H. No Arguments Contrary to Court's Claim Constructions ............................ 6

    I. No Disparaging the PTO ............................................................................. 6

    J. No Discovery Objections Shown to Jury and No Commentary on Objections ................................................................................................... 8

    K. No Testimony by Lay Witness as to Another Witness's Credibility ........... 8

    L. No Inequitable Conduct Allegations ........................................................... 9

    M. Argument that RJR Cannot Infringe Because RJR has its Own Patents ......................................................................................................... 9

    N. No Authors of Prior Art Commenting on Prior Art References .................. 9

    O. No Argument that Fuma Failed to Pursue a License .................................. 9

    P. No Arguments Contrary to PTO Practice ................................................. 10

    Q. No Suggestion that Fuma Drafted its Claims to Ensnare RJR .................. 10

    R. No Arguments Previously Rejected by the Court ..................................... 11

II. CONCLUSION ..................................................................................................... 12

# I. PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTIONS IN LIMINE ("MILs")[1]

## A. Irrelevant and Unfairly Prejudicial Personal History of Mr. Conley

RJR does not challenge Fuma's motion seeking to exclude any evidence or testimony regarding prior DUI or related charges or his discharge from the military. RJR's attempt to hold open the possibility of introducing such evidence and/or argument is not proper. (Dkt. 190, Opp'n at 2-3). If RJR believes that such evidence is relevant, RJR should explain such relevance now, which it has failed to do.

The only part of this MIL that RJR challenges relates to Mr. Conley's educational background. But Fuma's MIL does not seek to exclude the entirety, or even a significant portion, of Mr. Conley's educational and/or other professional training and experience. Fuma only seeks to exclude argument or testimony that attempts to disparage the on-line University, Trinity Southern, from which Mr. Conley obtained his undergraduate degree while working full time. (*See* Opp'n at 2, fn. 2). Such an attempt to disparage Trinity University constitutes collateral impeachment and is improper. *See, e.g., United States v. Catalan-Roman,* 585 F. 3d 453, 468-69 (1st Cir 2009) ("[I]mpeachment by extrinsic evidence is normally restricted to impeachment on matters that are not collateral."). FRE 608 does not permit questioning a witness's character based on collateral facts. The actions of individuals running Trinity University and/or allegations against those individuals does not bear on Mr. Conley's character for truthfulness or untruthfulness and are wholly collateral to any issue in this case.

---

[1] The titles of Fuma's motions are paraphrased for brevity.

### B. Pre-suit Communications Between Dirk Thomas and Ralph Gabric

Surprisingly, RJR affirmatively chose to forego reliance on advice of counsel to defend against the willful infringement charges but now seeks to rely on purported statements by its trial counsel—statements Fuma contests—to defend against the willful infringement charge. (Opp'n. at 3-4). Admitting this evidence would improperly circumvent LR 103.8 and its provisions regarding opinions of counsel. (*See* Opp'n at 4). RJR cannot use a purported statement by its outside counsel to show the state of mind of RJR. There is no evidence or testimony in the record that Mr. Gabric—or any other lawyer for RJR—advised RJR of any opinion regarding the validity of the Fuma patents. Thus, there is no foundation under FRE 901 for admitting into evidence any communication between Mr. Thomas and Mr. Gabric for any purpose, let alone to support RJR's denial of willful infringement.

Moreover, the authority cited by RJR for this argument, *DSM IP Assets, B.V. v. Lallemand Specialties, Inc.*, No. 16-CV-497-WMC, 2018 U.S. Dist. LEXIS 68504 (W.D. Wis. Apr. 24, 2018), stands for the proposition that an *infringer's desire to license a patent tends to show that it was **not obvious***, while RJR would have this Court believe that RJR's interest in licensing the Fuma patent somehow supports its obviousness invalidity charges. *Id.* at *41.

### C. Limiting RJR to its Narrowed Election of Prior Art References and Obviousness Combinations

RJR goes beyond offering "background prior art references." Rather, RJR combines them with other prior art to challenge validity. This is an invalidity

2

combination, not a "background reference."  All the cases presented by RJR recognize this distinction.  (Opp'n at 6).  *E.g. Verinata Health, Inc. v. Sequenom, Inc.*, Civ. No. 12-00865, 2014 U.S. Dist. LEXIS 116382, at *16 (N.D. Cal. Aug. 20, 2014) (excluding background prior art "to the extent that…[it]…allegedly renders the asserted claims…obvious.").  Dr. Collins repeatedly uses the so-called "background references" to argue how they can be combined to render claim elements obvious, which RJR does not even attempt to justify.  (Dkt. 175-3 at ¶¶173, 185, 188, 209, 212, 237, 249, 272).

RJR offers no rationale for why Fuma's motion is untimely, and Fuma's MIL seeking to enforce the limit on the number of invalidity contentions is appropriate.  (Opp'n at 7).

### D. RJR's Withholding Discovery of Other Development Efforts

RJR did not produce documents regarding development of RJR's Brooks patent.  RJR's representation that it "does not seek to rely on any witness or document that it did not previously identify or produce" does not cure the prejudice to Fuma.  (Opp'n at 8).  Despite relevance objections to Fuma's requests, RJR now argues that documents regarding these development efforts *are* relevant—intending to use the Brooks patent to combat evidence of copying.  (Opp'n at 9).  An interrogatory response and selected 30(b)(6) testimony do not cure RJR's decision to withhold documents based on its relevance objection.

Nothing required Fuma to contest RJR's objection by filing a motion to compel.  Fuma agrees that testimony and documents relating to the Brooks patent are not relevant.  Fuma's discovery requests plainly encompass earlier activities by RJR relating to

3

Alternative Smoking Devices. RJR was obligated to "state the scope [of the requests] that is not overbroad" and produce responsive documents, which it failed to do. Fed. R. Civ. P. 34(b)(2)(B), 2015 Committee Notes.

### E. Precluding Shanhong Wang's Declaration and Evidence

RJR claims no corroboration is required to admit Mr. Wang's declaration because Mr. Wang is "a disinterested fact witness." However, "[c]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest." *Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1377-78 (Fed. Cir. 2018) (quoting *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999)). Indeed, "the need for corroboration exists regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation (e.g., because that party is the accused infringer) **or is uninterested but testifying on behalf of an interested party**." *Finnigan Corp.*, 180 F.3d at 1367 (emphasis added). The need for corroboration of Mr. Wang's assertions is acute here because RJR has repeatedly engaged Mr. Wang for testimony and is apparently procuring his testimony across international borders in Hong Kong. *See The Barbed-Wire Patent*, 143 U.S. 275, 284 (1892) ("Witnesses who memories are **prodded by the eagerness of interested parties** to elicit testimony favorable to themselves are not usually to be depended upon for accurate information." (emphasis added)).

RJR claims that exhibits attached to Mr. Wang declaration, Conley's testimony, and Fuma's discovery responses sufficiently corroborate Mr. Wang's assertions. Not so. Regarding the exhibits Mr. Wang attached to his declaration, RJR's opposition addresses

4

none of the issues raised in Fuma's omnibus brief, such as the photographs and documents lacking dates and any identification of device structure that connect them to the bare assertions in Mr. Wang's declaration. (*See* Dkt. 175 at 7-8). Instead, RJR merely summarizes the uncorroborated assertions in Mr. Wang's declaration with recursive citation **to Mr. Wang's declaration itself**.

Further, nothing in Fuma's discovery responses or Mr. Conley's testimony corroborates Mr. Wang's assertions. In the interrogatory response, Mr. Conley and Mr. Hillenbrandt specifically denied recognizing the "Cartridge 2" and "Cartridge 3" devices Mr. Wang identifies, and listed specific differences between the "Cartridge 1" device and their recollection of the Smoke-51 Duo. (*See* Dkt. 159-3 at 81-88; Dkt. 181-2 ¶¶137-138). This is not corroboration, and Mr. Wang's declaration remains inadmissible as uncorroborated testimony of alleged prior art.

### F. No Prior Fuma Litigation

In view of RJR's representation that it will not introduce evidence of the type covered by this MIL, the MIL should be granted.

### G. No Allegations of Improper Inventorship

RJR admits that it is attempting to argue that the Fuma patent claims are invalid under 35 U.S.C. § 102(f) because Mr. Conley allegedly was not the inventor and that the claimed invention was derived by some unnamed "others." (Opp'n at 14). Yet, RJR does not allege that the Smoke 51 Duo anticipates, i.e. is the same as, any of the asserted claims—as required under 102(f). *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003) (citations and quotations omitted) ("[T]he party asserting invalidity

5

[under 102(f)] must prove both prior conception of the invention by another and communication of that conception to the patentee…sufficient to enable one of ordinary skill in the art to make the patented invention."). At most, RJR alleges that Messrs. Conley and Hillenbrandt's patented invention was somehow obvious based on the Smoke 51 Device—a device whose structure is disputed. RJR's derivation argument amounts to no more than an inventorship challenge, which RJR failed to prove during the inequitable conduct phase. RJR should not now be permitted to back-door allegations of false inventorship under the guise of a 102(f) invalidity challenge.

## H. No Arguments Contrary to Court's Claim Constructions

RJR argues that this MIL is moot, but then takes the next two pages of its brief to argue why it should be allowed to make the argument that the MIL seeks to preclude. (Opp'n at 15-16.). That argument is *exactly* the same argument RJR raised at the claim construction phase—and lost—and the *exact* same argument RJR raised in the summary judgment phase—and lost. Specifically, RJR seeks to argue to the jury that the *threads* on the infringing Solo device—which mechanically couple the cartridge to the battery—must also be electrically conductive to infringe the asserted claims of the '604 patent. That argument contradicts this Court's claim construction and summary judgment orders and should be precluded.

## I. No Disparaging the PTO

RJR raises the same argument opposing Fuma's MILs I and L, so they are addressed in combination here.

6

RJR's opposition to MIL I raises a new issue regarding whether the jury should be shown the Federal Judicial Center ("FJC") Patent Video. While the video has been used by multiple courts, RJR makes clear that it intends to use the video to suggest that the Patent Office did not properly undertake its responsibilities and made a mistake when issuing the asserted patents. (Opp'n at 17). But RJR points to nothing in the prosecution of the Fuma patents that suggests any such mistake was made, thereby uncovering the real reason for wanting to show the FJC video: to invite jury speculation that such a mistake happened and undermine the presumption of validity to which the Fuma patents are entitled.

The issue of whether the Smoke-51 Duo was known to the Examiner was fully litigated during the inequitable conduct phase of the case. The '604 prosecution history establishes that the Patent Examiner, through his own searches, found a disclosure of e-cigarettes having the same structure as all known two-piece e-cigarette devices that preceded the Fuma invention, which included the Smoke-51 Duo. Moreover, RJR has not produced or identified any examples or drawings of the Smoke-51 Duo that predates the filing date of Fuma's patents.

Furthermore, before he granted the '881 patent claims, Fuma provided to the patent Examiner the entirety of RJR's Preliminary Invalidity Contentions and its inequitable conduct allegations, which included RJR's characterization of the Smoke-51 Duo. Thus, the '881 Examiner, the same one who granted the '604 patent, was aware of RJR's characterizations of the Smoke-51 Duo device when granting Fuma's '881 patent.

7

RJR should not be permitted to argue that the Fuma inventors were not forthcoming in what they disclosed about the Smoke-51 Duo device because that issue has been resolved during the inequitable conduct phase.

### J. No Discovery Objections Shown to Jury and No Commentary on Objections

In view of RJR's representation that it will not introduce evidence of the type covered by this MIL, the MIL should be granted. However, to the extent RJR argues that any portion of an objection should be admitted under FRE 106, that is incorrect. Objections are not the sort of testimony or statements referenced in the Rule, and the Rule provides no independent basis for admitting objections into evidence. Objections offer no evidentiary context or purpose and do not serve to clarify a witness's own statements or testimony.

### K. No Testimony by Lay Witness as to Another Witness's Credibility

The parties disagree about what constitutes an attack on "credibility." No witness should offer testimony regarding the credibility of another. However, experts should be permitted to point out where their conclusions on topics within their field of expertise contradicts testimony of fact witnesses. For example, Dr. Vallee intends to testify that Denny Potter described the Fuma E-Cigarette in a way that would not work. (Dkt. 181-2, Vallee Rebuttal Report ¶¶303-304). While this testimony may tend to impugn the credibility of another witness, those conclusions should be left to the jury. *United States v. Opager*, 589 F.2d 799, 803 (5th Cir. 1979) (noting that Rule 608(b) does not bar the

"admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony…").

### L. No Inequitable Conduct Allegations

*See* MIL I *supra*.

### M. Argument that RJR Cannot Infringe Because RJR has its Own Patents

An order should issue consistent with the parties' agreement, i.e. the existence of RJR's patents cannot be argued to avoid *literal* infringement of the '604 patent.

### N. No Authors of Prior Art Commenting on Prior Art References

To the extent Mr. Wang would testify about what he meant or could have said in his Chinese patent application, his testimony is entirely irrelevant. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1375 (Fed. Cir. 2008) (noting that testimony from an inventor of prior art "would be irrelevant to the issue before the jury…."). Moreover, Wang's "development of the invention disclosed in…Wang '554" is not relevant to any issue in this case. (Opp'n at 22). The relevant inquiry is what the reference actually discloses, as understood by a person of ordinary skill in the art at the time of the invention, not what Wang or RJR wishes had been disclosed. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). Wang's post-hoc, hindsight development recollections have no relevance and should be excluded. If permitted to testify, Wang should not be permitted to fill gaps or add to the description in Wang '554.

### O. No Argument that Fuma Failed to Pursue a License

RJR's opposition to this MIL has been addressed in MIL B *supra*. The pre-suit communications between litigation counsel have no relevance to any issue in this case

9

because RJR has declined to rely on an advice of counsel defense. RJR offers no other bases for how these pre-suit communications might be relevant. Moreover, to the extent those communications were an offer to compromise by licensing the Fuma patents to avoid the present litigation, they should be excluded under FRE 408(a).

### P. No Arguments Contrary to PTO Practice

RJR argues that "[q]uestioning Conley about whether he submitted a legible color copy of documents included in black and white in the file wrapper…clarifies the information available to the patent examiner." (Opp'n at 24). Mr. Conley is not qualified to testify regarding patent office procedures for maintaining black-and-white or color copies. RJR attempts to undermine the presumption that the patents are valid by insinuating that Mr. Conley did something wrong. However, the File Wrappers of the asserted patents are in black-and-white because the PTO only maintains black-and-white copies. (Dkt. 175 at 16). RJR should be precluded from confusing the jury with accusations contrary to PTO practice.

### Q. No Suggestion that Fuma Drafted its Claims to Ensnare RJR

RJR's argument that "Fuma removed the 'threaded' requirement from the claims of the '881 patent because the SOLO was not 'threaded'" is both wrong and not an inquiry for the jury. (Opp'n at 25). RJR invites the jury to speculate by asking "what non-threaded product was Fuma trying to reach via its '881 patent that was not covered by its '604 patent?" (Opp'n at 26). In doing so, RJR seeks to have the jury assign a special meaning to the term "threaded" by speculating on Fuma's intentions during prosecution. While RJR argues that "prosecution history of related patents is proper

10

evidence that may inform the interpretation of a patent claim" (Opp'n at 25), **that interpretation is done by the Court, not the jury**. If RJR believed the term "threaded" required special interpretation based on prosecution history, the time for that argument was during the Court's claim construction proceedings.

In view of RJR's representation that it will "not introduce evidence regarding Fuma's intent to cover the Solo as evidence of inequitable conduct or bad faith in pursuing the '881 patent" the MIL should be granted. (Opp'n at 25).

### R. No Arguments Previously Rejected by the Court

While RJR agrees that the Court should not allow arguments that its prior rulings "preclude," it claims MIL R is too ambiguous to warrant a ruling before trial. Fuma specifically identified inequitable conduct, claim construction, and infringement rulings RJR is likely to attempt to re-litigate before the jury. (*See* Dkt. 175 at 17). Thus, MIL R is neither premature nor without context.

The risk that RJR will seek to reargue issues of claim construction are palpable given RJR's re-hashing of claim construction arguments in its opposition to these MILs (*see* MIL H, *supra*) and in its proposed jury instructions (Dkt. 168-3 at ¶¶18, 20, 22 (attempting to preserve argument rejected by the Court that the same feature that "mechanically couples" must also electrically couple)). While RJR asserts "[t]here may be legitimate disagreements about what arguments are permissible in view of the Court's prior rulings," arguments that are contrary to the Court's orders cannot be "legitimate disagreements."

## II. CONCLUSION

For the reasons above, the Court should grant Fuma's MILs.

Date: August 12, 2021

/s/ Brandon M. Jordan
Brandon M. Jordan
THE LAW FIRM OF BRANDON M. JORDAN PLLC
2800 Eisenhower Ave., Suite 220
Alexandria, VA 22314
Telephone: (703) 493-0231
Facsimile: (703) 832-4806
brandon@brandonjordan.net

/s/ Christopher P. Sullivan
Christopher P. Sullivan
ROBINS KAPLAN LLP
800 Boylston Street
Suite 2500
Boston, MA 02199
Telephone: (617) 267-2300
Facsimile: (617) 267-8288
csullivan@robinskaplan.com

/s/ Dirk D. Thomas
Dirk D. Thomas
DIRK D. THOMAS PLLC
1775 Eye Street NW, Suite 1150
Washington, DC 20006
Telephone: (202) 587-5690
Facsimile: (202) 587-5610
dirk.thomas@dthomasllc.com

/s/ Kevin G. Williams
William K. Davis
N.C. Bar No. 1117
Kevin G. Williams
N.C. Bar No. 25760
BELL, DAVIS & PITT, P.A.
100 North Cherry St., Suite 600
Winston-Salem, NC 27120-1029
Telephone: (336) 722-3700

Facsimile: (336) 722-8153
wdavis@belldavispitt.com
kwilliams@belldavispitt.com

Counsel for *FUMA INTERNATIONAL, LLC*

13

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.3(d)(1), the undersigned certifies that this Brief complies with the word limit contained in L.R. 7.3(d)(1), using the word count feature of the word processing software in making this certification.

/s/ Brandon M. Jordan
Brandon M. Jordan

## CERTIFICATE OF SERVICE

I hereby certify that, on Thursday, August 12, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

/s/ Brandon M. Jordan
Brandon M. Jordan