# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FUMA INTERNATIONAL LLC,
an Ohio limited liability company,

*Plaintiff/Counterdefendant*,

v.

R.J. REYNOLDS VAPOR COMPANY,
a North Carolina corporation,

*Defendant/Counterplaintiff.*

Civil Action No. 1:19-cv-260

and

Civil Action No. 1:19-cv-660

### R.J. REYNOLDS VAPOR COMPANY'S MEMORANDUM
### IN SUPPORT OF MOTION TO SEAL CONFIDENTIAL EXHIBITS AND TRIAL
### TRANSCRIPTS AND TO CLOSE THE COURTROOM

Defendant R.J. Reynolds Vapor Company ("Reynolds"), by counsel and pursuant to Local Rules 7.3 and 40.1(d), respectfully submits this brief in support of its motion to seal a small number of confidential trial exhibits,[1] to close the courtroom for discrete portions of the testimony of four witnesses, and to seal the trial transcript containing the testimony of these witnesses. Permitting public access to this evidence would disclose confidential and proprietary information made available to the FDA as part of the regulatory process; contract terms in agreements with non-parties regarding the acquisition of intellectual property rights, which terms are subject to confidentiality provisions; and financial projections, costs data, and information about Reynolds's future business plans,

---

[1] To avoid the need to file this memorandum under seal, printed copies of the trial exhibits at issue will be provided to the case manager for the Court's review.

the disclosure of which would harm Reynolds's relationship with business partners, give suppliers and competitors a leg-up in negotiations, and prematurely reveal Reynolds's plans for the emerging and still dynamic market for tobacco vapor products. For these reasons, more fully explained below, the Court should grant Reynolds's motion.

## I. BACKGROUND

### A. Non-Confidential Description of Material Sought to Be Sealed

#### 1. Trial Exhibits: PMTAs

FDA has required manufacturers to submit a Pre-Market Tobacco Product Application (PMTA) for authorization to market e-cigarettes. During this litigation, sections of Reynolds's PMTAs have been produced pursuant to the Court's protective order for four VUSE products, the Solo, Ciro, Vibe, and Alto. Those sections discuss general information about the company and the production (Section A), descriptive information about the product (Section C), and scientific studies and analyses (Section H). Section H in particular contains more than 300 pages of highly specific, technical, and confidential information related to the design of the product and its components. All versions of Section H are partially redacted.

| PMTA Confidential Exhibits | |
|---|---|
| **Exhibit Number** | **Description** |
| PX385/D0052 | Vuse Solo PMTA, Section H (redacted) |
| PX386 | Vuse Solo PMTA Section H (redacted) |
| PX395/D0054 | Vuse Vibe PMTA, Section H (redacted) |
| PX397 | Vuse Ciro PMTA, Section C (unredacted) |
| PX398 | Vuse Ciro PMTA Submission Letter, Vuse Ciro PMTA Section A (unredacted) |

| PMTA Confidential Exhibits | |
|---|---|
| **Exhibit Number** | **Description** |
| PX399/D0053 | Vuse Ciro PMTA Section H (redacted) |
| D0055, D0967 | Vuse Alto PMTA Section C (unredacted) |
| D0965 | Vuse Vibe PMTA Section C  (unredacted) |
| D0966 | Vuse Vibe PMTA Submission Letter and Section A (unredacted) |

Reynolds does not seek to seal portions of these exhibits or information contained therein that have already become part of the public docket in this case.  That includes excerpts from Section H of the Solo PMTA and the Ciro PMTA, filed as exhibits to Reynolds's memorandum in support of its motion for summary judgment, which were limited to the first approximately thirty to fifty pages (of more than 300 pages) of that section.  *See generally* Dkt. 122-1; Dkt. 122-2.  Reports from the technical experts, claim charts, and other materials have quoted or depicted images from the Vuse Solo and Vuse Ciro PMTA Section H, and appear on the Court's public docket for this case.  *See, e.g., generally* Dkt. 120.  But there is a difference between the public's access to minimal, discrete parts of the PMTAs scattered in multiple exhibits, and access to the complete (if redacted) document that would allow a member of the public to piece together the submission.  If the Court is not inclined to seal these exhibits because of prior partial public disclosure, Reynolds requests an opportunity to further redact the PMTAs to show only the parts that have been publicly disclosed, if the exhibits above are admitted at trial.

### 2. Trial Exhibits: Third-Party Agreements and Related Documents

Reynolds entered into separate agreements with two non-parties, Fontem and Minusa, to acquire certain intellectual property rights. Ex. 1, Short Decl. ¶ 8. Those unredacted agreements appear on the parties' exhibit lists, along with internal Reynolds presentations and meeting notes describing the Minusa agreement and the negotiations related to it. The agreements set forth the terms, including the agreed value of the intellectual property rights, and they include confidentiality provisions. *Id*.

| Third-Party Confidential Exhibits | |
|---|---|
| **Exhibit Number** | **Description** |
| PX376/D0655 | September 24, 2018 Settlement and License Agreement RJR v. Fontem |
| PX307/D0148 | July 3, 2014 MINUSA Intellectual Property Purchase and Assignment Agreement |
| PX306/D0149 | Presentation "Minusa Asset Purchase" |
| PX301/PX304/ D0899/D0204 | Presentation "Minusa Patent Portfolio, Value to RJRVC" (redacted) |
| PX305 | May 21, 2014 Minusa IP Meeting Report and Proposed Next Steps (redacted) |

### 3. Trial Testimony: Financial Forecasts, Costs Analyses, Future Business Plans

Based on the reports of the parties' damages experts, Ms. Carrie Distler and Mr. Stephen Holzen, Reynolds expects that these witnesses will testify about financial forecasts for Reynolds's VUSE product line, costs of productions, and Reynolds's non-public decisions about its future business plans. These witness will also likely discuss *historical* sales and market data. Reynolds does not seek to seal testimony regarding historical sales

information, but only the discrete portion of the testimony disclosing the information described. In addition, the parties have disclosed two regulatory experts who may testify at trial and who may refer to Reynolds's PMTAs. Reynolds requests that the courtroom be closed for these portions of the witnesses testimony and that the resulting trial transcripts of the testimony be redacted and sealed.

| Trial Testimony and Transcripts | |
|---|---|
| **Witness** | **Topic** |
| Stephen A. Holzen | Financial forecasts, product costs analyses, and future plans regarding product marketing and distribution |
| Carrie L. Distler | Financial forecasts, product costs analyses, and future plans regarding product marketing and distribution |
| Bahram Parvinian | FDA regulation, PMTAs |
| David Clissold | FDA regulation, PMTAs |

### B. Parties' Positions on the Likelihood of Use at Trial

Local Rule 40.1(d) requires the motion or brief to "summarize the substance of the meet and confer process and state the parties' positions about the likelihood that the testimony or exhibit(s) will be offered or used at trial." Fuma has stated that it intends to rely on the PMTAs, the Fontem agreement, the Minusa agreement and related materials, and the financial forecasts, costs analyses, and information about Reynolds's future business plans because that information was relied on by both side's technical and damages experts. At this stage, Reynolds does not expect that expert reports, schedules to expert reports, discovery materials summarizing the parties' contentions, and other similar materials will be admitted at trial. Fuma disagrees, and asserts that Reynolds's list of confidential information for sealing is incomplete because it omits these materials.

Reynolds respectfully requests an opportunity to supplement this motion if, contrary to the usual practice, these additional materials are admitted as exhibits at trial.

Fuma has also requested that Reynolds include a statement that "Fuma was unable to meaningfully participate in a meet and confer process given the late hour, the closeness of trial, and the fact that RJR still has not identified witness testimony, trial exhibits, or parts of trial exhibits that it wishes to have sealed per 40.1(d)(1-2)," and that Reynolds's "email on Friday night was the first time that RJR had ever attempted to confer with Fuma about sealing trial exhibits and testimony, notwithstanding that it should have been done 'promptly' after pre-trial disclosures were filed in July." Reynolds notes that it proposed identifying exhibits likely to be used at trial in an effort to narrow the parties' exhibit lists on October 11, 2021, and that Fuma declined to engage in that process.

## II.   LEGAL STANDARDS

The law of the regional circuit applies to non-substantive issues of patent law, including the question whether to seal district court records. *See Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1357 (Fed. Cir. 2020). It appears that this Court most recently considered the question of sealing trial exhibits and testimony in *Syngenta Crop Protection, LLC v. Willowood, LLC*, No. 1:15-CV-274, 2017 WL 6001818 (M.D.N.C. Dec. 4, 2017) (Eagles, J.). A motion to seal implicates both substantive and procedural requirements. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004).

Substantively, the Court must determine the nature of the information and the public's right to access. *Stone v. Univ. of MD. Medical Sys., Corp.*, 855 F.2d 178, 180 (4th

6

Cir. 1988). Although "the Supreme Court has not addressed whether the First Amendment's right of access extends to civil trials or other aspects of civil cases ..., the Fourth Circuit[ ] ha[s] recognized that the First Amendment right of access extends to civil trials and some civil filings." *Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011); *Syngenta*, 2017 WL 6001818, at *2. Even so, public access to civil trial records "is not absolute," and restrictions can be justified by concerns that such records "might ... become a vehicle for improper purposes," such as where the records serve "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see also Syngenta*, 2017 WL 6001818, at *2 (noting that the First Amendment "right of access to trials and trial exhibits "is neither absolute nor unlimited," and citing *Doe v. Pub. Citizen*, 749 F.3d 246, 263, 267 (4th Cir. 2014), and *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1218, 1228-29 (Fed. Cir. 2013)).

Procedurally, the Court must: "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (citing *Stone*, 855 F.2d at 181). Public notice can be satisfied through the docketing of a party's motion to seal. *Mears v. Atl. Se. Airlines, Inc.*, No. 5:12CV613F, 2014 WL 5018907, at *2 (E.D.N.C. Oct. 7, 2014). In

*Syngenta*, this Court also "arranged for posting notice of that motion on the Middle District's website." *Syngenta*, 2017 WL 6001818, at *3.

## III.     ARGUMENT

This Court has considered the following factors in deciding whether to seal civil trial exhibits and transcripts: whether "the information sought to be sealed is confidential"; whether disclosure would harm the movant's "competitive standing or otherwise harm its business interests"; "whether the motion is narrowly tailored"; and "whether the interests in non-disclosure are compelling and heavily outweigh the public's interest in access to the information." *Id.*

### A.     The Information Is Confidential

Reynolds submitted the PMTAs for each of the VUSE products confidentially, without public disclosure, and the FDA has maintained the confidentiality of those submissions. Ex. 1, Short Decl. ¶ 6; *see generally* 21 C.F.R. § 1114.47.[2] The Fontem and Minusa agreements are confidential and create contractual obligations to protect the terms of the agreements from disclosure. Ex. 1, Short Decl. ¶ 8. The trial exhibits related to the Minusa agreement either recite terms from the agreement or reveal Reynolds negotiation strategies regarding the agreement. *Id.* The trial testimony identified above is expected to review aspects of the PMTAs, as well as confidential information consisting of Reynolds's financial projections, market forecasts, various costs analyses for Reynolds vapor products,

---

[2] While Section H of the PMTAs are redacted, "the pages contain significantly more information" than the redactions, "all of which is of a confidential and proprietary nature." *Syngenta*, 2017 WL 6001818, at *7.

and Reynolds's internal business decisions regarding future plans for product distribution and marketing, information which is not publicly known. *Id.* ¶ 9. Moreover, the Court has issued a protective order and granted a motion to prevent the public disclosure of this type of information. *See, e.g.*, Dkt. 30, 31 (protective orders); Dkt. 205 (granting order to seal parts of briefing and exhibits related to Plaintiff's damages expert). In granting motions to seal exhibits to dispositive and non-dispositive briefing, this Court and others have recognized that the type of information at issue here is confidential.[3]

---

[3] *See, e.g.*, *Nuvasive, Inc v. Kormanis*, No. 1:18-CV-282, 2019 WL 9633644, at *3 (M.D.N.C. May 15, 2019) (granting in part motion to seal information disclosed with a confidentiality agreement where "disclosure of this information would harm the competitive standing" of the non-party that produced it); *Volumetrics Medical Imaging, LLC v. Toshiba Am. Medical Sys. Inc.*¸ No. 05CV955, 2012 WL 526059, at *1 (M.D.N.C. Feb. 12, 2012) (granting motion to seal schematics and board specifications for diagnostic ultrasound machines); *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 801 F. Supp. 2d 419, 424-29 (M.D.N.C. 2011) (granting motion to file under seal confidential and proprietary business information); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275, 2011 WL 901958, at *2-3 (E.D.N.C. Mar. 15, 2011) (granting motions to seal confidential and proprietary information related to the trade secrets at issue); *Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Co., LLC*, No. 07-0413, 2011 WL 322548, at *1-3 (S.D. W.Va. Jan. 31, 2011) (granting motion to seal engineering report containing process drawings of defendant's proprietary treatment process); *Cantrell v. Wirtgen Am., Inc.*, No. CCB-07-2778, 2011 WL 915324, at *1 n.1 (D. Md. Mar. 15, 2011) (granting motion to seal documents containing technical information regarding design processes and new product features); *Muri v. Killeen*, No. 03CV00051, 2004 WL 1124929, at *3 (W.D. Va. May 18, 2004) (granting motion to seal documents containing engineering data); *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, No. 09CV471, 2014 WL 2607364, at *5 (M.D.N.C. June 11, 2014) (granting motion to seal information concerning customers, customer purchase history, pricing, and costs); *SMD Software, Inc. v. EMove*, No. 08-CV-403, 2013 WL 1091054, at *6 (E.D.N.C. Mar. 15, 2013) (granting motion to seal financial, market share, pricing, and marketing information).

### B. Disclosure Would Harm Reynolds's Competitive Standing and Business Interests

The Fourth Circuit has recognized that "[a] corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records." *See Doe*, 749 F.3d at 269; *see also Sims v. BB&T Corp.*, 1:15-CV-732, 2018 WL 3466945, at *2 (M.D.N.C. July 18, 2018) (noting that "[b]usiness information that might harm a litigant's competitive standing may be a sufficient interest to overcome [even] the First Amendment right of access" (quotations omitted)).

### 1. PMTA Trial Exhibits and Related Testimony

Disclosure of the information contained in the PMTAs would give Reynolds's competitors insight into Reynolds's product designs, product formulations, regulatory strategy, marketing decisions, and business practices, causing substantial and irreparable harm to Reynolds's competitive position. Ex. 1, Short Decl. ¶ 6. Reynolds holds its decision regarding regulatory submissions in strict confidence, since disclosure would allow competitors to outmaneuver Reynolds in the regulatory process. *Id.* In addition, disclosing Reynolds's intellectual property, technical product details, and technical know-how would give Reynolds's competitors an unfair advantage by giving them insight into Reynolds's confidential technical capabilities, product development, and trade secrets, without making the same investment in the development of their own products. *Id.*

Courts recognize that disclosure of proprietary information submitted to a federal agency as part of the regulatory process can result in "significant competitive harm," *In re*

*Incretin-Based Therapies Prods. Liab. Litig.*, No. 13md2452 AJB (MDD), 2015 WL 11658712, at *3 (S.D. Cal. Nov. 18, 2015), and can be "extremely damaging," *Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 463 F. Supp. 2d 1073, 1083 (C.D. Cal. 2006); *see also, e.g.*, *Lucas v. Breg, Inc.*, No. 15-cv-00258-BASNLS, 2016 WL 5464549, at *2 (S.D. Cal. Sept. 28, 2016) (sealing premarket submission to the FDA addressing safety and effectiveness of device); *United States ex rel. Ruhe v. Masimo Corp.*, No. 10-cv-08169-CJC(VBKx), 2013 WL 12131173, at *2 (C.D. Cal. Aug. 26, 2013) (internal research studies and clinical tests for developing the accused device, and non-public data submitted to the FDA in the course of regulatory approval, were "confidential, proprietary, and [ ] valuable"). Indeed, because there is no issue in this case concerning the data submitted to the FDA, the information contained in the PMTAs "will shed no light on the judicial process and bears the risk of causing confusion to the public through the limited disclosure of traditionally confidential data and regulatory submissions." *In re Incretin-Based Therapies Prod. Liab. Litig.*, No. 13MD2452 AJB (MDD), 2015 WL 11658712, at *3 (S.D. Cal. Nov. 18, 2015).

The two expert witnesses designated to discuss the FDA regulatory environment as it pertains to the issues in this case may not need to disclose or discuss the contents of the PMTAs. Reynolds includes their testimony in this request out of an abundance of caution.

### 2. Third-Party Agreements and Related Documents

Disclosing the terms of the agreements between Reynolds and Fontem and Minusa would disadvantage Reynolds in future contract negotiations by revealing its business and

11

patent-acquisition strategies to the public. Ex. 1, Short Decl. ¶ 8. Intellectual property payment and licensing information, including "pricing terms, royalty rates, and guaranteed minimum payment terms," is "the precise sort of information" the disclosure of which can "harm a litigant's competitive standing." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (unpublished); *see also Apple, Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1225-26 (Fed. Cir. 2013) (applying Ninth Circuit law and holding that district court abused its discretion by ordering licensing agreements and other documents unsealed). For this reason, courts have recognized that patent licensing agreements constitute confidential business information that outweighs the public's right of access. *See, e.g.*, *Dynatemp Int'l, Inc. v. R421A, LLC*, No. 5:20-CV-142-FL, 2021 WL 3284799, at *13 (E.D.N.C. July 30, 2021) (granting motion to seal "information detailing the royalty payments" because "[t]he parties have a compelling need to protect this financial data and business information, which outweighs the public's interest in access"); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2018 WL 6795835, at *1 (E.D. Va. Nov. 1, 2018) (granting motion to seal agreement including "detailed licensing terms, covenants regarding the enforceability of patents, and an express agreement that the parties would keep its terms confidential"); *Ovonic Battery Co. v. Sanyo Elec. Co.*, No. 14-cv-01637, 2014 WL 2758756, at *2-*3 (N.D. Cal. Jun. 17, 2014) (finding that disclosure of "financial and other terms of licenses" could place the plaintiff "in a diminished bargaining position in future negotiations with potential customers and competitors, thereby causing significant harm to [plaintiff's] competitive standing."). That is particularly so where Fontem and Minusa, non-parties to

12

this litigation, may also be negatively affected by any disclosure.  Moreover, by their terms, the agreements impose an obligation of confidentiality on Reynolds regarding their contents.  Ex. 1, Short Decl. ¶ 8.

### 3. Damages Testimony Regarding Financial Projections, Costs Analyses, and Future Business Plans

The financial forecasts, costs breakdowns, and references to Reynolds's future business plans are quintessential confidential, proprietary, and trade secret information.  Its disclosure would give Reynolds's competitors, suppliers, and potential business partners a competitive and financial advantage, allowing them to undercut Reynolds in competitive purchasing and sales situations, as well as in preparing competitive sales, consumer research, marketing, product design, licensing strategies, and product distribution strategies.  *Id.* ¶ 9.  Disclosing specific cost information and bills of materials will allow competitors and business partners to gain leverage against Reynolds in business and supply agreement negotiations.  For example, Reynolds's suppliers could use cost information to negotiate higher price terms.  *Id.*

Confidential information about Reynolds's "*future* business plans" is particularly sensitive, *Apple*, 727 F.3d at 1224 (emphasis in original), as it would reveal information that is potentially damaging to Reynolds's business relationships with its wholesale and retail distributors, as well as give competitors insights into Reynolds's plan for the dynamic, emerging market of tobacco vapor products.  Ex. 1, Short Decl. ¶ 9.  Reynolds therefore has an overriding interest in keeping this information from the public.  *See, e.g.*, *Apple*, 727 F.3d at 1225 (district court erred by refusing to restrict "access to … profit,

13

cost, and margin data," because "it could give the suppliers an advantage in contract negotiations, which they could use to extract price increases for components" and "would put Apple and Samsung at a competitive disadvantage compared to their current position").

### C.    The Motion Is Narrowly Tailored

Reynolds seeks to seal just over a dozen trial exhibits out of a combined list of more than a thousand proposed exhibits. It has narrowly identified three categories of highly sensitive information, and the exhibits and trial testimony most likely to reveal this information. Reynolds does not "seek to seal all the testimony about the exhibits," *Syngenta*, 2017 WL 6001818, at \*5, nor does it seek to prevent the public from having access to historical sales and marketing data that may be revealed by the parties' damages expert witnesses during trial. Although Reynolds does seek to seal the PMTAs and third-party agreements (and related documents) in their entirety, that is appropriate because the documents themselves are confidential. *See Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2019 WL 9443777, at \*2 (N.D. Cal. June 18, 2019) (sealing internal corporate documents "concerning business transactions and corporate structure … in their entirety"). "The request to seal these documents is narrowly tailored [because the] documents would be useless if redacted to remove confidential information." *Alexander v. City of Greensboro*, No. 1:09-CV-00293, 2013 WL 6687248, at \*4 (M.D.N.C. Dec. 18, 2013) (referring to city's personnel records that was "almost entirely" confidential).

14

**D.     Reynolds's Interests Heavily Outweigh the Public's Interest**

Even granting that "[t]he public interest in open courts at this stage of the proceedings—a civil trial—is almost at its peak, exceeded only by the public interest in a criminal trial," the right to access does not override Reynolds's interest in protecting its confidential information, particularly when the evidence is not "needed to understand what [will] happen[ ] at trial." *Syngenta*, 2017 WL 6001818, at *3.  As noted above, no issue in this case turns on the data in the form submitted to the FDA, and so the PMTAs "will shed no light" on the issues at trial.  *In re Incretin-Based Therapies Prod. Liab. Litig.*, 2015 WL 11658712, at *3.  Witnesses, including expert witnesses, may properly describe facts also found in the PMTAs, or even use images derived from the PMTAs, without disclosing the regulatory submissions themselves.  These exhibits contain innumerable "details that w[ill] not [be] referenced during testimony or by counsel during opening statements or closing arguments." *Syngenta*, 2017 WL 6001818, at *6; *see also Airboss Rubber Compounding (NC), Inc. v. Kardoes Rubber Co.*, No. 1:12-CV-352, 2013 WL 12380267, at *1 (M.D.N.C. July 23, 2013) (Eagles, J.) (granting motion to seal "certain business and proprietary information which is not ordinarily public" because "[t]he competitive and financial interests of the parties would be harmed by public disclosure").

The damages expert witnesses may rely on certain terms from the third-party agreements with Fontem and Minusa in stating their opinions, but that does not justify throwing open the entire agreements and related documents to the public at large.  *See Apple*, 727 F.3d at 1226 ("[B]ecause the parties agreed to rely on less-detailed financial

15

information to prove their damages at trial, none of the documents were introduced into evidence. Thus, the financial information at issue was not considered by the jury and is not essential to the public's understanding of the jury's damages award.").

Similarly, the financial projections, costs analyses, and reference to Reynolds's future business plans will likely inform some part of the damages experts' testimony, but given the nature of the "hypothetical negotiation" analysis for patent damages, their ultimate opinions on royalty rates and base amounts will be supported largely by historical financial and cost information, and other evidence sufficient for the public "to evaluate the fairness of the proceedings and of the result." *Syngenta*, 2017 WL 6001818, at *6. The minimal interest that the public may have in this specific information is heavily outweighed by the clear and substantial risk of competitive and financial harm to Reynolds if the information is revealed. *See id.* ("The Court finds that Syngenta has demonstrated that its compelling interest in protecting its competitive standing heavily outweighs the public's right to access these trial exhibits.").

E.     **The Court Should Find That the Procedural Requirements Are Satisfied**

The procedural notice requirements mandated by the First Amendment will be satisfied by the posting of this motion on the Court's docket, *see Mears*, 2014 WL 5018907, at *2; *Syngenta*, 2017 WL 6001818, at *3, which will provide ample notice to the public. *See Ashcraft*, 218 F.3d at 288. Reynolds has also proposed the least drastic measures. It seeks to seal only a handful of trial exhibits and only a discrete portion of the testimony of, at most, four witnesses. This selective and narrow protection of confidential material

constitutes the least drastic method of shielding the information at issue. *Syngenta*, 2017 WL 6001818, at *5. Finally, as set forth above, there is plenty of support for concluding that the trial exhibits and expected trial testimony warrant protection from disclosure to the public.

By local rule, as a prerequisite to a motion to seal, the moving party must "[i]dentify in its pretrial disclosures … any witness testimony, trial exhibits, or parts of trial exhibits that it wishes to have sealed at trial" and "[i]dentify in its objections … any witness testimony, trial exhibits, or parts of trial exhibits identified by any other party that it wishes to have sealed at trial." L.R. 40.1(d)(1), (2). By its terms, these requirements apply only to trial exhibits and not to the substance of the expected trial testimony summarized above, or the ultimate trial transcripts. As to the exhibits, Reynolds acknowledges that it did not comply with the rule. The confidentiality of the exhibits at issue has, however, been well known to the parties and the Court throughout this litigation. Deposition transcripts covering these topics, and the documents themselves when used as deposition exhibits, were deemed highly confidential, attorney eyes only. The same is true for expert reports on these topics, and relevant discovery responses. Motions covering these topics have been filed under seal throughout the course of this litigation. Thus, the purpose of the rule has been satisfied; there is no conceivable prejudice to Fuma from excusing compliance with the rule; and as explained above, the public's interest in the right of access does not override Reynolds's interest in protecting its confidential information from public disclosure.

Reynolds has also substantially complied with the new rule by meeting and conferring with opposing counsel and by timely filing this motion at least seven days before trial.

Reynolds also notes that Local Rule 40.1(d) became effective on January 1 of this year—a year in which court proceedings and other trial activity was limited by the COVID-19 pandemic—and like other local rules, the decision whether to enforce it lies "within the discretion of the Court." *Boyles v. United States*, 171 F. Supp. 2d 556, 559 (M.D.N.C. 2001) (applying "extraordinary circumstances" standard for untimely motions).

## IV. CONCLUSION

Reynolds respectfully requests that the Court grant its motion to seal the trial exhibits and trial transcripts described here. For the reasons explained, Reynolds requests that the documents be permanently sealed. But at a minimum, Reynolds respectfully requests that the exhibits and transcripts remain sealed for a period of ninety days following the exhaustion of all appeals. At the expiration of that time, Reynolds will move to have the exhibits returned to it.

Reynolds also requests that the Court permit only those entitled under the Protective Order to receive "Confidential – Attorney's Eyes Only" information to be in the courtroom during testimony of the four witnesses related to the PMTAs or specified damages issues.

If the Court is inclined to deny the motion, Reynolds respectfully requests that it be denied without prejudice to re-raising the issue after trial. As this Court's opinion in *Syngenta* demonstrates, the Court's application of the First Amendment test—especially the need to evaluate whether "access to the evidence is needed to understand what

happened at trial"—is best decided after trial, when the Court and the parties will know what evidence was "discussed during the trial," whether witnesses were questioned "about limited and very specific information in these exhibits," and whether the "public would find it difficult to follow the testimony and to evaluate the jury's" verdict. *Syngenta*, 2017 WL 6001818, at *6-*7.

Dated:  November 8, 2021

/s/ *John F. Morrow, Jr.*

John F. Morrow, Jr. (N.C. Bar No. 23382)
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:    (336) 721-3584
Facsimile:    (336) 733-8429
John.Morrow@wbd-us.com

John D. Wooten IV, NCSB No. 51074
WOMBLE BOND DICKINSON (US) LLP
300 N. Greene St., Suite 1900
Greensboro, NC 27401
Telephone:    (336) 574-8090
Facsimile:    (336) 574-4524
JD.Wooten@wbd-us.com

/s/ *Jason T. Burnette*

Frank T. Bayuk (GA Bar No. 142596)*
Jason T. Burnette (GA Bar No. 242526)*
JONES DAY
1221 Peachtree Street NE, Suite 400
Atlanta, GA 30361
Telephone:    (404) 521-3939
fbayuk@jonesday.com
jtburnette@jonesday.com

/s/ *Ralph J. Gabric*

Ralph J. Gabric (IL Bar No. 6198485)*
ralph.gabric@haynesboone.com

19

Laura Beth Miller (IL Bar No. 6191408)*
laura.miller@haynesboone.com
Judy K. He (IL Bar No. 6327020)*
judy.he@haynesboone.com
HAYNES AND BOONE, LLP
180 North LaSalle Street, Suite 2215
Chicago, IL 60601
Telephone:    (312) 216-1620
Facsimile:    (312) 216-1621

Attorneys for Defendant/Counterplaintiff
*R.J. REYNOLDS VAPOR COMPANY*

*By special appearance under local rule

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.3(d), I certify that this document complies with the word count limitation of Rule 7.3(d). This certificate was prepared in reliance on the word count feature of the word processing software used to prepare this document.

Dated:  November 8, 2021

*/s/ Jason T. Burnette*

Jason T. Burnette (by special appearance)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this through the Court's CM/ECF system on November 8, 2021.


Dated: November 8, 2021

*/s/ Jason T. Burnette*
Jason T. Burnette (by special appearance)